Jussef M. Galib Frangie, Judith Bras, La Sociedad Legal de Gananciales, demandantes y recurrentes, *v.* El Vocero de Puerto Rico, Inc., Maggie Bobb, demandados y recurridos.

*Número:* RE-92-484 *Resuelto:* 6 de junio de 1995

562

*Ricardo Skerrett Yordán,* de *Woods & Woods,* abogado de los recurrentes; *Juan R. Marchand Quintero, José E. Colón Rodríguez* y *Francisco Ortiz Santini,* de *Rivera Cestero & Marchand Quintero,* abogados de los recurridos.

EL JUEZ PRESIDENTE SEÑOR ANDRÉU GARCÍA emitió la opinión del Tribunal.

## I

Los demandantes del epígrafe instaron acción de daños y perjuicios por libelo el 17 de octubre de 1991 en el Tribunal Superior, Sala de San Juan, contra *El Vocero de Puerto Rico* (en adelante *El Vocero*) y la reportera Maggie Bobb. Alegaron que en el periódico *El Vocero* se publicaron una serie de artículos firmados por la periodista Maggie Bobb y un editorial sobre presuntas irregularidades ocurridas en la Administración de Reglamentos y Permisos (en adelante ARPE), supuestamente perjudiciales a la reputación del demandante, el Sr. Jussef M. Galib Frangie.

Los artículos periodísticos y el editorial en los cuales se fundamentó la demanda fueron publicados por el referido periódico en sus ediciones de 30 de agosto, de 4, 5, 10 y 17 de septiembre y de 17 de octubre de 1990.

Los demandantes alegaron que estos escritos fueron publicados con negligencia y con pleno conocimiento de su falsedad y, además, le causaron daños valorados en una suma superior a los dieciséis millones de dólares ($16,000,000).

En la demanda se hizo constar que la parte demandante le había enviado a *El Vocero* una carta certificada con fecha de 18 de julio de 1991. Ésta le ofrecía a la parte demandada la oportunidad de rectificar la información falsa que había sido publicada, sin embargo, la parte demandada hizo caso omiso a dicha carta.

Contestada la demanda, y después de varios trámites procesales, la parte demandada presentó moción de desestimación parcial para alegar que las causas de acción fundamentadas en seis (6) de las siete (7) publicaciones estaban prescritas. Argumentó que la Carta de 18 de julio de 1991 no tuvo el efecto de interrumpir el término prescriptivo con respecto a los escritos publicados desde el 17 de

agosto hasta el 30 de septiembre de 1990, ya que no se reclamó en tal carta resarcimiento alguno por éstos. Argumentó, además, dicha parte, que la carta referida sólo formulaba la petición de rectificación a nombre del señor Galib y no de su esposa y de la sociedad legal de gananciales.[1]

El tribunal de instancia acogió el planteamiento de la parte demandada y dictó sentencia parcial que desestimaba las causas de acción relativas a los escritos publicados entre el 30 de agosto y el 17 de septiembre de 1990. Determinó, además, que cada una de las publicaciones generaba una causa de acción separada e independiente de las demás y, por lo tanto, cada una tenía su propio término prescriptivo de un (1) año.

La parte demandante interpuso recurso de revisión para plantear que el tribunal de instancia incurrió en error al determinar: (1) que la Carta de 18 de julio de 1991 no tuvo el efecto de interrumpir el término prescriptivo de las causas de acción fundamentadas en las publicaciones en controversia; (2) al utilizar la norma de la publicación única y determinar que seis (6) de las causas de acción estaban prescritas, y (3) al determinar que si la Carta de 18 de julio de 1991 hubiera sido eficaz para interrumpir el término prescriptivo de las causas de acción del señor Galib Frangie, aun así no hubiera interrumpido la prescripción de las causas de acción de la señora Brás y de la sociedad legal de gananciales.

Mediante Resolución de 4 de diciembre de 1992, le concedimos término a los demandados recurridos para que mostraran causa:

> ...por la cual no deba expedirse el auto solicitado y revocar la sentencia dictada en lro. de septiembre de 1992, por razón de

---

[1] La parte demandante presentó moción para oponerse a la solicitud de desestimación parcial. En esencia, argumentó que los artículos publicados daban lugar a una sola causa de acción porque se trataba de un daño continuo; además, que la Carta de 18 de julio de 1991 interrumpió efectivamente el término prescriptivo.

que la causa de acción del demandante Jussef M. Frangie no estaba prescrita.

Dicha parte ha comparecido. Su comparecencia, sin embargo, no nos convence. Procede resolver según lo intimado en la orden de mostrar causa emitida. Veamos por qué.

## II

Debemos decidir, en primer lugar, si la Carta de 18 de julio de 1991 tuvo el efecto de interrumpir el término prescriptivo de las causas de acción incoadas por el demandante recurrente Jussef M. Galib Frangie.

La *prescripción* es una institución de derecho sustantivo que se rige por las disposiciones del Código Civil y constituye una forma de extinción de un determinado derecho debido a la inercia de la relación jurídica durante un período de tiempo determinado. El transcurso del período de tiempo establecido por ley, sin que el titular del derecho lo reclame, da lugar a la presunción legal de abandono de éste, lo que en conjunto con la exigencia que informa el ordenamiento jurídico para eliminar la incertidumbre de las relaciones jurídicas constituyen los fundamentos básicos de la prescripción extintiva. *García Aponte et al. v. E.L.A. et al.*, 135 D.P.R. 137 (1994); *Cintrón v. E.L.A.*, 127 D.P.R. 582 (1990). La prescripción sirve a la paz jurídica, a la seguridad general y al bien público. Son razones de utilidad social las que le sirven de fundamento, las cuales no pueden quedar al arbitrio de los particulares.[2] Guillermo Orozco Pardo define la *prescripción* como "una institución fundada en la seguridad jurídica, que atiende a dotar de certeza a las relaciones jurídicas, en su plano objetivo y cuya causa subjetiva de actuar está en la relevancia y consecuencia que la ley dota a la

---

[2] L. Díez-Picazo y A. Gullón, *Sistema de Derecho Civil*, 2da ed., Madrid, Ed. Tecnos, 1978, Vol. I, pág. 501.

ausencia de una voluntad manifestada, expresa o tácitamente, por las partes de esa relación jurídica sujeta a prescripción".[3]

La prescripción del derecho es lo excepcional al ser su ejercicio o conservación lo normal, por lo que el ordenamiento jurídico potencia el ejercicio y la conservación de los derechos mediante la utilización de los medios interruptivos de la prescripción.[4]

El acto interruptivo representa la manifestación inequívoca de una voluntad contraria al mantenimiento de la situación inerte que está manifestada con anterioridad a que el plazo de deliberación se agote. *García Aponte et al. v. E.L.A. et al.*, supra; *Zambrana Maldonado v. E.L.A.*, 129 D.P.R. 740 (1992).

La prescripción de las acciones se interrumpe por su ejercicio ante los tribunales; por la reclamación extrajudicial del acreedor, o mediante cualquier acto de reconocimiento de deuda por parte del deudor. Art. 1873 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5303.

Los requisitos de los actos interruptivos son: (a) *la oportunidad o tempestividad*, que requiere que el ejercicio de la acción debe realizarse antes de la consumación del plazo; (b) *la legitimación*, según la cual el ejercicio corresponde al titular del derecho o de la acción; (c) la *identidad*, que consiste en que la acción ejercitada ha de responder exactamente al derecho que está afectado por la prescripción, y (d) la *idoneidad* del medio utilizado.

Cabe destacar que se ha de realizar un verdadero acto de reclamación de la deuda, en el cual se refleja perfectamente el *animus conservandi*.[5]

---

[3] G. Orozco Pardo, *La interrupción de la prescripción extintiva en el derecho civil*, Granada, Universidad de Granada, 1986, pág. 56.

[4] Orozco Pardo, *op. cit.*, pág. 59.

[5] Véanse: Orozco Pardo, *op. cit.*, pág. 156 *et seq.*; *Zambrana Maldonado v. E.L.A.*, 129 D.P.R. 740 (1992).

■ En cuanto a la reclamación extrajudicial, no hay relación limitativa hecha por la ley sobre qué actos son los que se incluyen en esta causa interruptiva, y admite como tales todos aquéllos en que la voluntad del acreedor quede patente. En cuanto a la forma de la reclamación, la ley no exige ninguna forma especial. *Zambrana Maldonado v. E.L.A.*, supra.

En definitiva, la reclamación extrajudicial puede plasmarse a través de distintos actos, pero todos ellos han de cumplir con los requisitos genéricos de oportunidad, identidad, legitimación e idoneidad antes reseñados.[6]

La parte demandada recurrida sostiene que la Carta de 18 de julio de 1991 no constituyó una reclamación interruptiva eficaz por carecer del requisito de identidad.

■ El elemento de "identidad" ha sido definido como una "auténtica exigencia de la efectividad de la deuda".[7] Puig Brutau señala que es necesario que "el acto interruptivo extrajudicial sea realizado por el acreedor en forma clara e inequívoca, que no deje dudas acerca de su intención".[8]

En *Cintrón v. E.L.A.*, supra, págs. 592–593, citando a Díez-Picazo, dijimos:

> Ante todo es menester tomar en consideración que lo que la ley considera como un acto de interrupción de la prescripción es el ejercicio de la misma acción que está prescribiendo. Debe, pues, existir identidad entre la acción ejercitada y la acción en prescripción. Esto es importante cuando de un mismo supuesto de hechos nacen en favor de un mismo titular acciones diversas. (Énfasis suprimido.)

■ En *Zambrana Maldonado v. E.L.A.*, supra, pág. 751, citando a *Feliciano v. A.A.A.*, 93 D.P.R. 655, 660

---

[6] Orozco Pardo, *op. cit.*, pág. 195.

[7] Q.M. Scaevola, *Código Civil*, Madrid, Ed. Reus, 1965, T. XXXII, Vol. 2, pág. 969.

[8] J. Puig Brutau, *Caducidad y Prescripción Extintiva y Usucapión*, Barcelona, Ed. Bosch, 1988, pág. 91.

(1966), señalamos que si en la notificación que el demandante cursó al demandado, aquél se limitó meramente a ofrecer información, entonces el término prescriptivo no quedó interrumpido, ya que la mera información no constituye " 'la manifestación inequívoca de qui[e]n, amenazado con la pérdida de su derecho, expresa su voluntad de no perderlo' ". Véase, también, *Cintrón v. E.L.A.*, supra.

Debemos determinar, entonces, si la Carta de 18 de julio de 1991, enviada al editor de *El Vocero* por el representante legal del demandante recurrente, Jussef M. Galib Frangie, cumplió con el requisito de identidad y, en consecuencia, si tuvo el efecto de interrumpir el término prescriptivo.

Dicha carta expresó, en lo pertinente:

> ...Los artículos fueron publicados con total menosprecio de la verdad, con malicia y premeditación, *causándole grandes daños económicos y angustias mentales a mi cliente* y a su familia.

> ...Cabe señalar que *El Vocero* no está inmune a una demanda por difamación y libelo a mi cliente y su familia ya que mi cliente no es una figura pública y su periódico publicó esta serie de artículos con total menosprecio de la verdad.

> Como representante legal de mi cliente por la presente se le exige a su periódico que rectifique públicamente en un artículo cuyo titular deberá salir en primera plana dentro de los próximos 10 días a partir de la notificación de esta carta, exonerando y desvinculando a mi cliente de todo lo relacionado con el supuesto escándalo ARPE. Su periódico deberá admitir públicamente en dicho artículo que publicó información falsa e incorrecta en cada uno de los artículos publicados y señalados en esta carta.
> De no recibir contestación a esta carta dentro de los próximos 10 días a partir de la notificación de la misma, *mi cliente procederá a radicar senda demanda en contra de su periódico en los tribunales.* (Énfasis suplido.) Carta de 18 de julio de 1991, págs. 3–4.

El tribunal de instancia concluyó que la carta referida no interrumpió el término prescriptivo porque el reclamo formulado en ella no está dirigido a obtener de la parte

demandada una indemnización por los daños, sino una rectificación. Añadió el tribunal sentenciador que "[e]l problema con tal reclamo es que resulta ser uno al cual el Sr. Galib no tiene derecho. Un medio informativo no puede ser compelido por terceros a diseminar una información de su particular interés, del mismo modo que no puede ser amordazado". Sentencia parcial, pág. 7. Se apoyó dicha conclusión en la doctrina establecida por el Tribunal Supremo federal en *Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241 (1974).

Dicha doctrina no tiene el alcance que le atribuyó el tribunal de instancia. La controversia allí planteada fue en cuanto a si un estatuto estatal que concedía a los candidatos a puestos políticos un derecho a espacio igual en el periódico para replicar los ataques y las críticas de los cuales fuesen objeto por el periódico infringía el derecho de libertad de prensa. El tribunal determinó que tal estatuto era inconstitucional. Sin embargo, la decisión no afectó el derecho de una persona privada a solicitar la corrección o retractación de la información publicada, lo cual es objeto de la controversia planteada en el caso de autos. La decisión del caso de *Miami Herald Publishing Co. v. Tornillo*, supra, tiene un alcance mucho más limitado.[9]

Sobre este aspecto, señalan J.E. Nowak y R.D. Rotunda:

...[T]he Supreme Court has never ruled out the possibility that a court could order a retraction statement from a person who is found (under the proper standard for the case) to have defamed another. Members of the Court ... have noted that the Consti-

---

[9] Así lo demuestra la expresión concurrente del Juez Brennan, a la cual se unió el Juez Rehnquist. Dicha expresión lee del siguiente modo:

"I join the Court's opinion which, as I understand it, addresses only 'right of reply' statutes and implies no view upon the constitutionality of 'retraction' statutes affording plaintiffs able to prove defamatory falsehoods a statutory action to require publication of a retraction." *Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241, 258 (1974).

tution prohibition on 'right of reply' statutes does not suggest that a right of retraction statute would be forbidden.[10]

No es correcta tampoco la conclusión del tribunal de instancia en cuanto a que la comunicación del demandante no formuló una reclamación de indemnización por los daños alegados. El periódico demandado publicó información que vinculaba al demandante con un supuesto escándalo en ARPE. Si el rotativo hubiera rectificado la información —supuestamente falsa— como se le solicitó, ello hubiera constituido·una indemnización "en específico" del alegado daño causado, con la cual aparentemente el demandante se hubiera considerado satisfecho.

En esta abarcadora área del derecho, como es la de daños y perjuicios, no existe un concepto unitario de daño por la diversidad de matices que abarca. Desde un punto de vista objetivo, se ha caracterizado el concepto de "daño" como el menoscabo que a consecuencia de un acontecimiento o evento determinado sufra una persona, sea en sus bienes vitales naturales, en su propiedad o en su patrimonio.[11] Desde esta perspectiva se ha definido el "daño" como "la actuación desfavorable de las circunstancias que a consecuencia de un hecho determinado se produce contra la voluntad de una persona y que afecta los bienes jurídicos que le pertenecen (personalidad, libertad, honor, patrimonio)".[12]

El daño puede ser patrimonial y no patrimonial. Ésta es la clasificación que más atención ha merecido de la doctrina. Son daños patrimoniales los que producen un menoscabo valorable en dinero sobre los intereses patrimonia-

---

[10] J.E. Nowak y R.D. Rotunda, *Constitutional Law*, 3ra ed., Minnesota, Ed. West Pub. Co., 1986, pág. 932.

[11] J. Santos Briz, *La responsabilidad civil*, 7ma ed. rev., Madrid, Ed. Montecorvo, 1993, pág. 146.

[12] Santos Briz, *op. cit.*, pág. 146, esc. 144.

les del perjudicado. *Daños no patrimoniales son*, en principio, aquéllos cuya valorización en dinero no tiene la base equivalencial que caracteriza a los patrimoniales, por afectar precisamente a elementos o intereses de difícil valoración pecuniaria.[13]

▆ Un principio de general aplicación en las legislaciones es la reparación de daños en forma específica.[14] Si el que dañó ha ocasionado un menoscabo en la esfera jurídica de otra persona, es lógico que la reparación debida consista en reintegrar esa esfera lesionada a su estado anterior al daño (*restitutio in integrum*). Sólo cuando no sea posible esa reintegración al estado originario se acudirá a verificar la reparación en dinero. Santos Briz, *op. cit.*, págs. 324–325.

En *Rodríguez Cancel v. A.E.E.*, 116 D.P.R. 443, 454–455 (1985), expresamos que bajo las disposiciones del Art. 1802 del Código Civil la reparación puede verificarse de dos (2) formas o maneras, a saber: (a) la reparación natural o reintegración en forma específica, o (b) la indemnización en dinero; que la primera alternativa, la de restablecer al perjudicado a la situación en que se hallaba antes de sufrir el daño, constituye la solución ideal; que únicamente debe acudirse a la indemnización en dinero si el restablecimiento de la condición original no es factible.

▆ Señalamos en el caso citado que, no obstante, debe reconocerse que la aplicación de la norma sobre reparación *in natura* resulta de difícil aplicación en la práctica, lo que ha causado que los tribunales opten en muchas oca-

---

[13] Santos Briz, *op. cit.*, pág. 162.

[14] En efecto, se pronuncian por la reparación en forma específica como regla general y por la indemnización en dinero como medio supletorio de resarcimiento los Códigos Civiles de Alemania (parágrafos, 249, 250 y 251), de Austria (parágrafos 1,323), de Italia (Artículo 2,058), de Brasil (Art. 1,534) y el 1966 de Portugal (Art. 562). El Código Suizo de Obligaciones sienta la regla según la cual el juez determinará la forma y cuantía de la indemnización o el resarcimiento (Art. 43). En el mismo sentido parece inspirarse la jurisprudencia francesa, en defecto de precepto expreso del Código de Napoleón. Santos Briz, *op. cit.*, pág. 324, esc. 310.

siones por el "camino más fácil" de la indemnización en dinero.

 La restitución natural puede efectuarse no sólo en cuanto a los daños patrimoniales, sino también para los extrapatrimoniales. Santos Briz señala, como ejemplo, que en el caso de infracciones contra el honor puede exigirse la retractación de las manifestaciones lesivas como medio de satisfacción del ofendido.[15]

En la carta en controversia, (1) se informa a la parte demandada que los artículos en cuestión han causado grandes daños económicos y angustias mentales al demandante y a su familia; (2) se solicita en forma inequívoca una retractación o rectificación de la información publicada, en la alternativa de no recibirse su contestación en un determinado plazo, y (3) se informa en forma clara y sin ambigüedad de clase alguna, que el demandante "procederá a radicar senda [sic] demanda en contra de su periódico en los tribunales". Carta de 18 de julio de 1991, pág. 4.

Interpretada tal carta en su totalidad, a la luz de los principios expuestos, es forzoso concluir que ésta constituye un claro requerimiento de reparación de los daños causados y, como tal, tuvo el efecto de interrumpir el término prescriptivo de las causas de acción presentadas por el demandante Galib Frangie.

## III

Debemos decidir finalmente si la carta referida interrumpió también el término prescriptivo de las causas de acción interpuestas por la Sra. Judith Brás y de la sociedad legal de gananciales compuesta por ella y el señor Galib Frangie.

Dicha carta fue enviada a la parte demandada por el

---

[15] J. Santos Briz, *El Derecho de Daños*, Madrid, Ed. Rev. Der. Privado, 1963, pág. 209.

representante legal del demandante Galib Frangie y no hace ninguna referencia a la esposa de éste ni a la sociedad legal de gananciales.

A los efectos de escapar de la conclusión que ello conlleva, la parte recurrente argumenta que los artículos publicados por El Vocero constituyeron un daño continuado y, por lo tanto, que el plazo de prescripción de las causas de acción de los mencionados reclamantes comenzó a transcurrir el día de la producción del resultado dañoso definitivo. Señala que los artículos publicados —que dieron origen a la demanda— se expresan sobre un mismo tópico, un supuesto escándalo en ARPE por favoritismo e irregularidades relacionadas con la otorgación de un permiso de uso para la construcción del condominio Los Jacintos; estos se vinculan a la parte demandante recurrente Galib Frangie, y que no son artículos independientes por estar relacionados entre sí. Las características señaladas no son suficientes para constituir un daño continuo. Veamos.

■ El Art. 1868 del Código Civil, 31 L.P.R.A. sec. 5298, determina, en lo pertinente, que la acción derivada de la culpa o negligencia "prescribe por el transcurso de un (1) año ... desde que lo supo el agraviado".

■ La fecha de conocimiento del daño constituye con frecuencia un delicado problema de prueba e interpretación. La dificultad reside en la variedad de circunstancias en que se da el problema del conocimiento del daño. Hechos distintos requieren soluciones diversas. *Rivera Encarnación v. E.L.A.*, 113 D.P.R. 383 (1982). Entre las diversas categorías de hechos se hallan los daños sucesivos o continuados; los daños instantáneos y permanentes; el daño cuya extensión o cuantía no se manifiesta de inmediato; el daño embrionario, no identificable hasta el transcurso de determinado tiempo; el daño que se oculta dolosamente por el autor; los daños múltiples, algunos de los cuales no son descubribles hasta más tarde, y el daño

desconocido, que no viene a detectarse hasta tiempo después del acto culposo. *Rivera Encarnación v. E.L.A.*, supra.

La parte recurrente sostiene que la serie de artículos publicados por la parte recurrida constituyen un daño continuado, cuyo término de prescripción comenzó a transcurrir en la fecha cuando se publicó el último artículo. No tiene razón.

■ *Daños continuados* son "aquéllos producidos por uno o más actos culposos o negligentes imputables al actor, coetáneos o no, que resultan en consecuencias lesivas ininterrumpidas, sostenidas, duraderas sin interrupción, unidas entre sí, las cuales al ser conocidas hacen que también se conozca —por ser previsible— el carácter continuado e ininterrumpido de sus efectos, convirtiéndose en ese momento en un daño cierto compuesto por elementos de daño actual (aquel que ya ha acaecido) y de daño futuro previsible y por tanto cierto".(16)

Lo determinante es el momento *cuando comienza* la producción de los daños, que deberá tomarse en consideración como el inicio del término de prescripción, al presuponer que los perjudicados los conocían desde entonces y que pudieran ejercitar la causa de acción.

■ En la jurisdicción federal y en la mayoría de las jurisdicciones de Estados Unidos se ha adoptado la doctrina llamada "The Single Publication Rule", según la cual cada publicación, como la edición de un periódico, un libro, una revista o un programa de radio o televisión es considerado como una unidad que da origen *a una sola causa de acción.*(17) *Se ha reconocido que para propósitos de la pres-*

---

(16) H.M. Brau Del Toro, *Los daños y perjuicios extracontractuales en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1986, Vol. II, Cap. X, pág. 648.

(17) "The Uniform Single Publication Act" fue promulgada en 1952 y fue adoptada inicialmente en Arizona, California, Idaho, Illinois, Nuevo México, Dakota del Norte y Pennsylvania.

En 1976, "The Single Publication Rule" fue adoptada por "The American Law Institute". 3 *Restatement of the Law (Second) of Torts* Sec. 577A (1977) establece:

" 87 577A. *Single and Multiple Publications*

*cripción, ésta empieza a transcurrir cuando la publicación es puesta a la venta.*(¹⁸) En *Díaz Segarra v. El Vocero*, 105 D.P.R. 850, 852 (1977), adoptamos la mencionada "regla de la publicación única" a los efectos de que "la edición completa del periódico, revista o libro se considera una sola publicación que da lugar, en casos de libelo, a una sola causa de acción". Sin embargo, en *Ojeda v. El Vocero de P.R.*, 137 D.P.R. 315 (1994), al ratificar dicha regla rechazamos expresamente la interpretación de la mayoría de las jurisdicciones estatales norteamericanas y en la jurisdicción federal, al efecto de que el término prescriptivo empieza a transcurrir *automáticamente* desde la fecha misma de la publicación. En lugar de tal interpretación, allí establecimos la norma de que el período de un (1) año para las acciones de daños y perjuicios por difamación, incluyendo el libelo, *comienza desde que el agraviado obtiene conocimiento del daño.* No obstante, en el caso citado adoptamos la regla de que "una vez se presente la evidencia de la publicación de la noticia libelosa en un rotativo de circulación general en la Isla, de esta evidencia circunstancial se pued[e] razonablemente inferir que la persona perjudicada se enteró del daño el mismo día de la publicación de dicha información". *Ojeda v. El Vocero de P.R.*, supra, págs. 428–429.

---

"(1) Except as stated in Subsections (2 and (3), each of several communications to a third person by the same defamer is a separate publication.

. . . . . . . .

"Comment on Subsection (1):

"a. It is the general rule that each communication of the same defamatory matter by the same defamer, whether to a new person or to the same person, is a separate and distinct publication, for which a separate cause of action arises.

"*Illustration*:

"1. On one occasion A says to B that C is a murderer. On a later occasion A repeats the same statement to B. On a third occasion A makes the same statement to D. Each of the three communications is a separate publication and C has three causes of action against A."

(¹⁸) Véanse: *Zuck v. Interstate Publishing Corp.*, 317 F.2d 727 (2do Cir. 1963); *Billingsley v. Triangle Publication, Inc.*, 194 F.Supp. 330 (D. N.Y. 1961); *Kiliam v. Stackpole Sons*, 98 F.Supp. 500 (D. Penn.1951).

De las alegaciones contenidas en la demanda presentada en el caso de autos, podemos inferir con claridad que el término prescriptivo de cada una de las causas de acción que ejerce la Sra. Judith Brás a nombre propio y, en conjunto con su marido, a nombre de la sociedad legal de gananciales que ambos componen, comenzó a decursar en la fecha de publicación de cada uno de los artículos en controversia. Ninguna alegación contiene dicha demanda a los efectos de que, razonablemente, pueda determinarse que los recurrentes conocieron de dichas publicaciones en fechas posteriores o que no pudieron ejercitar, sin obstáculo, sus respectivas causas de acción dentro del término prescriptivo.

Por los fundamentos expuestos, *se expedirá el auto solicitado y se dictará sentencia modificando la sentencia parcial recurrida a los efectos de revocar aquella parte de ésta que decretó la desestimación de las reclamaciones del demandante recurrente Jussef M. Galib Frangie y así modificada se confirmará y se ordenará la continuación de los procedimientos en el tribunal de instancia en forma compatible con lo aquí resuelto.*

El Juez Asociado Señor Negrón García se inhibió. El Juez Asociado Señor Rebollo López no intervino.