# 2003 DTA 140

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL VI DE CAGUAS/HUMACAO/GUAYAMA
## PANEL I

WANDA BRISTOL LOPEZ
Demandante-Apelada

v.

NATIONAL LUMBER AND HARDWARE, INC., EDGARDO CEPEDA
Núm. KLAN-02-00716

San Juan, Puerto Rico, a 29 de agosto de 2003

Panel integrado por su Presidenta, la Juez Pesante Martínez
y los Jueces Rodríguez García y Salas Soler

Pesante Martínez, Jueza Ponente

█

█

## TEXTO COMPLETO DE LA SENTENCIA

Ante nos los apelantes, National Lumber and Hardware, Inc. (en adelante National) y el Sr. Edgardo Cepeda (en adelante Cepeda) solicitando la revisión de una sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Guayama, mediante la cual se declaró con lugar una demanda por hostigamiento sexual, despido injustificado y daños y perjuicios presentada en su contra.

En la misma, el Tribunal ordenó la reinstalación de la querellada en su empleo, más el pago de los salarios y beneficios marginales dejados de devengar. Además le concedió una indemnización de $25,000.00 por los daños morales ocasionados y $3,000.00 por concepto de honorarios de abogados.

Por los fundamentos que expondremos a continuación, modificamos la sentencia apelada.

### I

Wanda I. Bristol López instó una querella en contra de su patrono National Lumber and Hardware y de su supervisor, Edgardo Cepeda, por alegado hostigamiento sexual, despido injustificado, y daños y perjuicios. Negadas las alegaciones, y tras varios incidentes propios de estos casos, se celebró la vista en su fondo.

Conforme a la transcripción de la prueba que se desfiló durante la misma, los hechos son los siguientes.

La apelada trabajó por 8 años y medio para el patrono demandado, National, en la tienda de Guayama. Durante este tiempo ocupó varias plazas hasta culminar como encargada del área de *"show room"*. Hasta septiembre de 1999, cuando llegó el Sr. Edgardo Cepeda como nuevo gerente de la tienda, la Sra. Bristol siempre mantuvo relaciones cordiales y de respeto con sus supervisores, compañeros de trabajo y clientela. Este hecho se reflejó en que durante el tiempo trabajado por la apelada sólo se constaban en su expediente dos amonestaciones sobre incidentes de poca importancia.

A la llegada del señor Cepeda como nuevo gerente de la tienda, éste comenzó un patrón de hostigamiento sexual hacia la señora Bristol. Le comentaba que se tenía que portar bien con él para poder recibir mejor trato. Cuando la veía con un uniforme rojo que la apelada vestía, esperaba a que nadie estuviera presente para acudir a

su área de trabajo para decirle que el uniforme le quedaba *"bonito, chulo"* porque se le marcaban las caderas y que lo volvía loco. Le decía, además, que sus labios se veían carnosos cuando ésta usaba lápiz labial rojo. También en una ocasión, le hizo insinuaciones sobre un traje que la apelada vistió para ir a trabajar en las Navidades de 1999.

Durante el juicio, la apelada declaró sentir temor ante los acercamientos del apelante, por lo que en varias ocasiones lo amenazó con acudir a querellarse al Departamento del Trabajo y Recursos Humanos. Ante dichas amenazas, Cepeda le contestaba que si lo hacía o decía algo a alguno de sus compañeros, la despediría.

Declaró además la apelada que el 8 de febrero de 2000 tuvo lugar una actividad en un hotel de San Juan en la que se requirió que compareciera. Fue informada de esta actividad a las 3:00 de la tarde del mismo día, y la actividad comenzaba a las 7:00 de la noche. El apelante le indicó que se fuera con él, con la misma ropa que tenía puesta. Ésta se negó, por lo que el apelante se molestó.

Tres días después, el 11 de febrero de 2000, se concedieron aumentos salariales a los empleados de la tienda de Guayama, excepto a muy contados empleados entre los cuales se encontraba la apelada. Ante dicha situación, ésta decidió ir a reclamar a Cepeda para conocer porqué no se le había concedido el aumento, y éste le contestó que ella no se lo había ganado debido a sus actitudes, dirigiéndose a ella de modo burlón.

En ese momento se encontraba en la tienda el auditor de la empresa, Sr. Osvaldo Mier, por lo que la señora Bristol solicitó reunirse con él. Éste sin reunirse con la querellante, ni obtener su versión de los hechos, le informó que no había sido considerada para el aumento de sueldo por los problemas personales que había tenido con el señor Cepeda. Alterada, la apelada les gritó a sus supervisores que ella conocía las verdaderas razones para no concederle el aumento, mientras Cepeda se reía de ella.

La señora Bristol solicitó que se le autorizara ausentarse durante la tarde para ir a un médico, ya que no se sentía bien, pero el permiso le fue denegado. No obstante, durante su hora de almuerzo, acudió a la oficina de su médico de cabecera quien la encontró muy nerviosa, pero no pudo atenderla, ya que la oficina estaba repleta de pacientes.

Una vez regresó a su trabajo, fue hasta el almacén y le pidió a uno de los empleados un palo de madera, que guardó en el baúl de su auto, con el que alegadamente amenazó al señor Cepeda. Cuando regresó a su área de trabajo, sus supervisores la llamaron a la oficina para notificarle que estaba despedida. La apelada se descontroló, comenzó a gritarle a sus supervisores, y los amenazó diciéndoles que ella tenía quien la defendiera. Después de este incidente, la apelada fue obligada a desalojar la tienda, por instrucciones de Cepeda dadas por el sistema de altavoces para que fuera escoltada por el guardia de seguridad hasta la salida.

La apelada declaró, además, que no se querelló del acoso sexual ante ninguno de los gerentes y/o altos funcionarios de la empresa por temor a ser despedida, y que estuvo cerca de seis meses, luego del despido, sin trabajar fuera de su casa, por lo que tuvo que vender su automóvil.

De la exposición estipulada de la prueba se desprende además que los apelantes alegaron tener una política pública en contra del hostigamiento sexual, pero no pudieron demostrar que copia de la misma le hubiera sido entregada a la apelada. A través de la prueba que presentaron sólo comprobaron que la apelada firmó un papel acusando recibo de haber leído la misma, sin tener ellos constancia de que la hubiere leído.

Se desprende además que la empresa no tenía un mecanismo de evaluación de los empleados mediante el cual se pudiera determinar de manera objetiva cuáles empleados merecían aumentos de sueldo y cuáles no. Esta determinación se basaba únicamente en la opinión del gerente, cuya recomendación determinaba si se le concedía un aumento a un empleado.

Los problemas entre la señora Bristol y el señor Cepeda comenzaron desde que éste llegó como nuevo gerente de la tienda en septiembre de 1999. Para esta fecha, la apelada llevaba aproximadamente 7 años trabajando para National. Durante el juicio tanto el gerente como el subgerente declararon que la apelada había cometido innumerables actos de insubordinación, pero no presentaron prueba de haberle dado alguna amonestación por su conducta. Adujeron además que la apelada violó en muchas ocasiones el reglamento de la tienda y que muchos clientes se quejaban de sus actitudes y faltas de respeto, mas dicha información no se evidenció con documento alguno.

De otra parte, precisa señalar que hasta el momento del juicio, el propio apelante Cepeda desconocía si el patrono realizó alguna investigación sobre la imputación en su contra de acoso sexual presentada por la apelada. Según su testimonio, él no fue citado con motivo de investigación alguna.

A tenor con los hechos relatados, y por haber dado entera credibilidad al testimonio de la querellante apelada, el Tribunal de Primera Instancia declaró con lugar la demanda, ordenó su reinstalación en el empleo, le concedió una indemnización de $25,000.00 por los daños y perjuicios y $3,000.00 en concepto de honorarios de abogado.

Inconforme, la parte demandada apelante comparece ante nos mediante el recurso de epígrafe señalando la comisión de varios errores: (1) resolver contrario a la prueba recibida y contrario al balance más racional, lógico y jurídico de la totalidad de la prueba; (2) conceder daños no probados; (3) ordenar la restitución de la demandante en el empleo; y (4) imponer la condena de honorarios de abogado en ausencia de temeridad.

Examinada la totalidad del expediente, resolvemos.

## II
Discutiremos de manera separada cada señalamiento de error.

En el primer señalamiento de error sostienen los apelantes que erró el foro apelado al dar crédito únicamente al testimonio de la apelada, cuando éste alegadamente fue ampliamente impugnado.

Sabido es que en ausencia de pasión, prejuicio, parcialidad o error manifiesto, nos está vedado intervenir con la apreciación de la prueba que haya hecho el juzgador de los hechos a nivel de instancia. Esta doctrina tiene su génesis en el hecho de que los tribunales de primera instancia se encuentran en mejor posición de evaluar la prueba desfilada, ya que tienen la oportunidad de observar y escuchar a los testigos. Es por esto que su apreciación merece gran respeto y deferencia. *Pueblo v. Acevedo Estrada*, __ D.P.R. __ (2000), **2000 J.T.S. 22**, opinión de 19 de enero de 2000; *Trinidad García v. Chade*, **2001 J.T.S. 10**, opinión de 18 de enero de 2001.

Las impugnaciones a las que hace referencia la parte apelante fueron consideradas por el Tribunal de Instancia al momento de emitir su sentencia, pero las mismas no fueron creídas. El Tribunal dejó establecido en su sentencia que muchos de los testimonios fueron *"acomodaticios o alineados a la parte que los presentaba"*; además, de que otorgó credibilidad a base de su apreciación de los *"gestos, titubeos, contradicciones, manerismos, dudas y vacilaciones"* de los testigos.

En el caso que nos ocupa, luego de examinar el expediente y la transcripción de la vista en su fondo, encontramos que el tribunal sentenciador tuvo prueba suficiente para concluir que la apelada fue víctima de acoso sexual. Esta prueba, contrario a lo que sostiene la parte apelada, no fue impugnada al punto de poder establecer que la presente acción es una mera represalia por haber sido despedida del empleo.

No se cometió el primer error.

## III

En el segundo señalamiento sostiene la parte apelante que erró el foro apelado al conceder daños no probados.

En nuestro ordenamiento, la responsabilidad civil en daños y perjuicios postula el deber de resarcir al damnificado, otorgándole un valor económico al daño sufrido. *Rivera v. Tiendas Pitusa, Inc.,* ___ D.P.R. ___ (1999), **99 J.T.S. 107**, opinión de 28 de junio de 1999; *S.L.G. v. F.W. Woolworth & Co.,* 143 D.P.R. 76 (1997); *García Pagán v. Shiley Caribbean,* 122 D.P.R. 193 (1988).

Por daño se entiende todo aquel menoscabo material o moral que a consecuencia de un acontecimiento o evento determinado sufre una persona, ya bien sea en sus bienes vitales naturales, en su propiedad o en su patrimonio. *Cintrón Adorno v. Gómez,* 147 D.P.R. 576 (1999); *Galib Frangie v. El Vocero de P.R.,* 138 D.P.R. 560 (1995). Este menoscabo se clasifica, de ordinario, en daño patrimonial y no patrimonial. Como daños patrimoniales se entienden aquéllos que producen un menoscabo cuantificable en dinero sobre los intereses patrimoniales del perjudicado. Mientras los no patrimoniales son, en principio, aquéllos cuya valorización en dinero no tienen una base equivalente que caracteriza a los patrimoniales, por afectar precisamente a elementos o intereses de difícil valoración pecuniaria. *Galib Frangie v. El Vocero de P.R., supra.*

La reparación del daño puede verificarse de dos formas: (1) la reparación natural o reintegración en forma específica, o (2) la indemnización en dinero. Estas dos alternativas son mutuamente excluyentes. *Galib Frangie v. El Vocero de P.R., supra.* La alternativa inicial de restablecer al perjudicado a la situación en que se hallaba antes de sufrir el daño constituye la solución ideal, por lo que únicamente debe acudirse a la indemnización en dinero si el restablecimiento de la condición original no es factible. *Galib Frangie v. El Vocero P.R., supra.*

En el segundo caso, el dinero muchas veces no puede ser paragonado con el dolor padecido, pero con éste se persigue proporcionar a la víctima una compensación que, sin llegar a devolverle lo perdido, le permita procurarse placeres y satisfacciones, psíquicas o mentales, aptas para atenuar el dolor sufrido. *Riley v. Rodríguez de Pacheco,* 119 D.P.R. 762 (1987).

No obstante, al medir los daños en un caso, el juzgador debe hacerlo sobre una estricta base de correspondencia con la prueba, procurando siempre que la indemnización no se convierta en una industria y que no lesione la economía. Este deber de los jueces tiene el propósito de conservar el sentido remediador y no punitivo de nuestra responsabilidad civil. *Rivera v. Tiendas Pitusa, Inc., supra; S.L.G. v. F.W. Woolworth & Co., supra.* Esta gestión judicial de estimación y valorización de los daños es, pues, una difícil y angustiosa labor, al no existir un sistema mecánico que nos permita llegar a un resultado exacto en relación con el cual todas las partes queden satisfechas y complacidas. *Nieves Cruz v. U.P.R.,* ___ D.P.R. ___ (2000), **2000 J.T.S. 91**, opinión de 31 de de 2000; *Blas v. Hosp. Guadalupe,* 146 D.P.R. 267 (1998).

Esta labor descansa en la sana discreción del juzgador. Los tribunales de instancias están, en principio, en una mejor posición para apreciar y determinar los daños sufridos. Ello es así, en cuanto son éstos los que tienen contacto directo con la prueba que a esos efectos presenta la parte que los reclama. De ahí surge una norma de abstención judicial. Conforme a ésta, un foro apelativo no interviene, de ordinario, con la adjudicación de los daños realizada por el Tribunal de Primera Instancia, a menos que la cuantía concedida resultase ridículamente alta o extremadamente baja. *Nieves Cruz v. U.P.R., supra.*

La parte apelante tiene razón cuando dice que durante su testimonio la apelada admitió que durante los meses en que estuvo en su casa trabajó cuidando a su sobrino a cambio de remuneración, y que en algún momento antes de agosto de 2000 recibió una cantidad de dinero de parte del Departamento del Trabajo por concepto de desempleo. Aún así, el foro apelado no tomó estos datos en consideración.

Los dineros recibidos por la apelada deben deducirse de la compensación otorgada. De igual manera, entendemos que los sufrimientos y angustias mentales producto de la conducta de violencia y agresividad demostrada por ésta en un momento determinado fueron indebidamente tomados en consideración por el Tribunal al concederle la indemnización. La parte apelante no debió responsabilizarse por estos daños, ya que los mismos fueron autoinfligidos.

En virtud de lo anterior, y luego de haber examinado detenidamente la trascripción de la prueba, somos de la opinión de que las sumas concedidas por el Tribunal de Primera Instancia deben ser modificadas. La única prueba presentada por la parte apelada tendente a establecer el daño sufrido lo constituyó su propio testimonio, y el mismo no nos permite validar la determinación del tribunal *a quo*. Procedemos pues a armonizar las sumas concedidas con la prueba presentada, y reducirlas a la cantidad de $15,000.00.

## IV

En su tercer señalamiento, los apelantes reclaman que se revoque la determinación del foro apelado de restituir a la apelada en su empleo. Fundamenta su requerimiento en que las condiciones de trabajo entre la apelada y el personal gerencial están afectadas a tal grado que restablecer el ambiente de trabajo a uno agradable y llevadero sería muy difícil, o casi imposible.

**El Artículo 11 de la Ley Núm. 17 de 22 de abril de 1988, 29 L.P.R.A. sec. 155(j), que penaliza el hostigamiento sexual, establece en su parte pertinente que:** *"en la sentencia que se dicte en acciones civiles interpuestas bajo las precedentes disposiciones, el tribunal podrá ordenar al patrono que emplee, promueva o reponga en su empleo al empleado y que cese y desista del acto de que se trate"*. **La reposición al empleo antes referida no puede darse en el vacío.**

El hostigamiento sexual en el empleo es una forma de discrimen por razón de sexo y como tal constituye una práctica ilegal e indeseable que atenta contra la cláusula constitucional que establece que la dignidad del ser humano es inviolable, y proscribe todo discrimen por motivo de raza, color, sexo, nacimiento, origen o condición social, ideas políticas o religiosas. Constitución de Puerto Rico, Art. II, sección 1; *Rodríguez v. Supermercados Amigos*, 126 D.P.R. 117 (1990).

Es harto conocido que el ordenamiento recoge dos modalidades de hostigamiento sexual: *quid pro quo* (algo a cambio de algo) y/o ambiente hostil o intimidante. En la modalidad de *quid pro quo,* el sometimiento o rechazo por parte de la persona hostigada se convierte en fundamento para la toma de decisiones en el empleo o respecto del empleo que afectan a esa persona. La otra modalidad, ambiente hostil, surge cuando la conducta del hostigador tiene el efecto o propósito de interferir irrazonablemente con el desempeño del trabajo de esa persona o le crea un ambiente de trabajo intimidante, hostil u ofensivo.

Es de esperar que ya que el propósito medular de esta legislación es que el trabajador disfrute de su empleo sin sufrir discrimen, el remedio preferente en casos de despido por discrimen sea la reposición en el empleo, siempre que ello sea posible. *López Vicil v. ITT Intermedia, Inc.,* 142 D.P.R. 857 (1997). Antes de ordenar la reinstalación, el tribunal de instancia debe dilucidar si la misma es apropiada, o si el antagonismo entre el patrono y el empleado impide que la misma tenga lugar. *Odriozola v. S. Cosmetic Dist. Corp.,* 116 D.P.R. 485 (1985). █

En el presente caso, el tribunal de instancia determinó que se dio el hostigamiento en su modalidad de ambiente hostil, o sea, que el ambiente de trabajo de la apelada se afectó severamente. Ante tal determinación, y tomando en consideración las circunstancias particulares del caso, entendemos que ordenar que la señora Bristol sea restituida en el empleo que tanto le afectó, bajo las condiciones de trabajo antes descritas, es un error.

Ante la situación de hechos presentada, ordenar la reposición de la apelada en su empleo sería perpetuar un

ambiente de discordia y de falta de comunicación debido al extremo en que llegaron a deteriorarse las relaciones.

Habida cuenta lo anterior, revocamos la determinación de Instancia al ordenar que la apelada sea restituida en el empleo.

## V

En el último señalamiento de error que presentan en su escrito, los apelantes alegan que los hechos en el presente caso no reflejan la existencia de temeridad, por lo que debe revocarse la imposición de honorarios de abogado.

Según la Regla 44.1(d) de las de Procedimiento Civil de Puerto Rico, 32 L.P.R.A. Ap. III, un tribunal impondrá honorarios de abogado cuando una parte haya demostrado una manifiesta conducta temeraria. La imposición de honorarios de abogado es discrecional, pero la Regla 44.1(d), *supra*, es clara en el sentido de que cuando una parte ha procedido con temeridad, el tribunal deberá imponerle en su sentencia el pago de una suma por concepto de honorarios de abogado.

Determinada la existencia de temeridad, la condena de honorarios es imperativa. *Blas Toledo v. Hospital Guadalupe, supra*. En términos generales, se considera temeraria toda aquella conducta que haga necesario un pleito que se pudo evitar, que lo prolongue innecesariamente o requiera a la otra parte efectuar gestiones innecesarias. El propósito de la imposición de honorarios de abogado en casos de temeridad es *"establecer una penalidad a un litigante perdidoso que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito." Blas v. Hospital Guadalupe, supra*.

La conciencia de la *"propia sinrazón"* que caracteriza a la parte temeraria no debe afectar a quien en buena lid ejerce o defiende sus derechos. Un postulado fundamental de nuestro sistema de administrar justicia es que *"no puede penalizarse a un litigante que utiliza las vías judiciales para vindicar un derecho por el simple hecho de no haber prevalecido en su acción. Así, la norma imperante en nuestro ordenamiento procesal civil establece que la parte victoriosa siempre tiene derecho a recobrar las costas, pero los honorarios de abogado sólo proceden cuando el tribunal determina que la parte perdidosa actuó con temeridad." González v. Commonwealth Insurance Co.,* 140 D.P.R. 673 (1996).

Examinado el presente caso para determinar si la imposición de honorarios estuvo justificada, resolvemos en la negativa. Los hechos expuestos fueron reclamados por primera vez a través de la presentación de la demanda que originó el presente pleito. De otra parte, este no fue un litigio que requirió gastos, trabajos o molestias innecesarias. No debe castigarse a una parte por ejercer su derecho a cuestionar y/o requerir que un Tribunal de Justicia determine a quién le asiste la razón y el derecho.

## VI

Por los fundamentos antes expuestos, se rebaja la cuantía concedida en daños a la parte apelada a $15,000.00; se revoca la determinación de que la misma sea reinstalada en el empleo que antes ocupaba, y se revoca la imposición de honorarios de abogado a la parte apelante. Así MODIFICADA, se confirma la sentencia.

Lo acordó el Tribunal y lo certifica la Secretaria General.

Aida I. Oquendo Graulau
Secretaria General

1. Los casos *Lopez Vicil v. ITT Intermedia, Inc., supra, y Odriozola v. S. Cosmetic Dist. Corp., supra,* se resuelven dentro del contexto del discrimen por razón de edad.