SENTENCIA
Acude ante nosotros el Banco Popular de Puerto Rico de una sentencia dictada por el Tribunal de Apelaciones, en la que se confirmó la previa determinación del Tribunal de *206 Primera Instancia, que se había negado a desestimar el pleito de epígrafe por prescripción según alegaba el Banco.
El foro apelativo intermedio resolvió que el término prescriptivo en el caso de autos se interrumpió cuando la recurrida, María Umpierre Biascoechea, acudió a la Corporación del Fondo de Seguro del Estado a recibir tratamiento médico por motivo de unas alegadas presiones a las que la sometía su supervisor, y que comenzó a transcurrir nuevamente a partir de la resolución final de dicha agencia.
Expedimos el recurso el 14 de octubre de 2005. Contamos con el beneficio de la comparecencia de las partes, por lo que estamos preparados para resolver; procedemos a hacerlo.
Analizado los argumentos de las partes en este caso, se revoca el dictamen del Tribunal de Apelaciones y se desestima la demanda instada por cuanto estaba prescrita.
Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada Señora Rodríguez Rodríguez emitió una opinión de conformidad, a la que se le unió el Juez Presidente Señor Hernández Denton. El Juez Asociado Señor Fuster Berlingeri y la Jueza Asociada Señora Fiol Matta disintieron con sendas opiniones escritas.
(Fdo.) Aida Ileana Oquendo Graulau

Secretaria del Tribunal Supremo

Opinión de conformidad emitida por la
Juez Asociada Señora Rodríguez Rodríguez, a la que se une el Juez Presidente Señor Hernández Denton.
El caso de marras nos brindó la oportunidad de resolver cuándo comienza a transcurrir el término prescriptivo de un año para instar una reclamación por hostigamiento *207 sexual en su modalidad de ambiente hostil. Hecha tal determinación, se debía auscultar si dicho término se interrumpe cuando la empleada perjudicada acude a la Corporación del Fondo del Seguro del Estado para recibir tratamiento por los daños que el alegado ambiente hostil le produjo.
I
La recurrida, María Umpierre Biascoechea, comenzó a trabajar en el Banco Popular de Puerto Rico (Banco o Banco Popular) el 2 de enero de 1998. Allí se desempeñaba como cajera-receptora (“teller”). Durante el período de tiempo que laboró en la sucursal de Altamira del Banco Popular, alegadamente fue víctima de un patrón de hostigamiento sexual por parte de su supervisor inmediato, el codemandado Sr. Jesús Cáez. El 4 de febrero de 2000 ocurrió un último incidente de alegado hostigamiento cuando el señor Cáez le gritó a la señora Umpierre Biascoechea en presencia de algunos compañeros de trabajo y clientes, por ésta haberse ausentado de sus labores sin notificación previa. Luego de esa fecha, la recurrida no se presentó a trabajar en el Banco.
A raíz de lo sucedido, la señora Umpierre Biascoechea se reunió con el gerente de la sucursal, el Sr. Javier Vélez, para brindarle su versión de lo ocurrido, así como para informarle sobre los problemas que confrontaba con su supervisor.(1) En dicha reunión, la recurrida notificó que había acudido a un médico privado que le había recomendado descanso por varias semanas por estar sufriendo de una depresión severa. Ante tal situación, el 7 de febrero de 2000 el gerente Vélez completó un informe patronal y refi *208 rió a la recurrida a la Corporación del Fondo del Seguro del Estado (Fondo).
La señora Umpierre Biascoechea acudió al Fondo y alegó “que debido a una serie de incidentes con su Supervisor, el cual la presiona constantemente, se ha afectado emocionalmente”.(2) El 8 de febrero de 2000 el Fondo le recomendó recibir tratamiento en descanso. Sin embargo, subsiguientemente, la agencia emitió una resolución el 19 de julio de 2001, notificada el 23 de julio de 2001, en la cual concluyó que la señora Umpierre Biascoechea padecía de un desorden depresivo atípico, no relacionado con el empleo. En consecuencia, el caso ante el Fondo fue cerrado y archivado.
Mientras se encontraba en descanso, y antes de la notificación del Fondo, la recurrida presentó su carta de renuncia al Banco, con fecha a manuscrito de 12 de marzo de 2000.(3) El 13 de marzo de 2001 la representación legal de la recurrida envió una misiva al Banco Popular en la que le reclamó extrajudicialmente y al señor Cáez por el ambiente hostil al cual estuvo expuesta la recurrida y que culminó con su renuncia involuntaria.
El 15 de junio de 2001, previo a recibirse la notificación del Fondo, la señora Umpierre Biascoechea presentó una demanda ante el Tribunal de Primera Instancia, Sala Superior de Bayamón, en la que alegó haber sido hostigada sexualmente por el señor Cáez, lo que le ocasionó daños y angustias mentales ascendentes a $100,000. La demanda se presentó al amparo de la Ley Núm. 69 de 6 de julio de 1985 (29 L.P.R.A. sec. 1321 et seq.) y la Ley Núm. 17 de 22 *209 de abril de 1988 (29 L.P.R.A. sec. 155 et seq.). Se adujo en ésta que el Banco Popular era responsable solidariamente con el señor Cáez de sus daños, por tener conocimiento de los alegados actos de hostigamiento sexual y no tomar medidas correctivas para evitarlos.
Ambos codemandados (peticionarios) contestaron oportunamente la demanda. Luego de varios trámites procesales, presentaron conjuntamente una solicitud de sentencia sumaria. En ella plantearon, esencialmente, que la reclamación por hostigamiento sexual al amparo de la referida Ley Núm. 17 estaba prescrita y, en la alternativa, que los hechos alegados no fueron lo suficientemente severos como para configurar una causa de acción por hostigamiento sexual en ninguna de sus modalidades.
Sobre la alegación de prescripción, los peticionarios sostuvieron que el último de los alegados actos de hostigamiento sexual ocurrió el 4 de febrero de 2000 y que era a partir de esa fecha que comenzaba a transcurrir el término prescriptivo de un año para presentar su reclamación judicial o para reclamar extrajudicialmente por los daños sufridos. Habida cuenta que ninguna de las dos cosas había ocurrido dentro de ese término, forzoso era concluir que la demanda instada estaba prescrita. Argüyeron además que, aun tomando como inicio del plazo la fecha de renuncia 12 de marzo de 2000, la demanda estaba igualmente prescrita porque la reclamación extrajudicial se instó un día después de haber vencido el plazo prescriptivo.
La recurrida se opuso a la solicitud de los demandados. Adujo que, según los propios documentos preparados por el Banco Popular, su renuncia se presentó el 13 de marzo de 2000 y que es a partir de esa fecha que comienza a computarse el plazo prescriptivo. Conforme a ello, la reclamación extrajudicial del 13 de marzo del año siguiente interrumpió oportunamente el término prescriptivo, y en consecuencia, la demanda fue presentada dentro del término previsto. No obstante esta argumentación, la recurrida *210 planteó que el término prescriptivo quedó interrumpido por el referido al Fondo y comenzó a transcurrir nuevamente con la resolución final de esta agencia de que su condición no estaba relacionada con su trabajo.
Los peticionarios replicaron y señalaron que una acción por hostigamiento sexual está excluida de la inmunidad patronal y de la exclusividad de remedios de la Ley de Compensaciones por Accidentes del Trabajo por constituir actos intencionales y discriminatorios, por lo que una reclamante no tiene que esperar a la determinación final del Fondo para acudir al tribunal e instar la acción correspondiente.
Trabada así la controversia, el Tribunal de Primera Instancia declaró “sin lugar” la moción de sentencia sumaria presentada. De la intricada minuta de la vista celebrada se desprende que el tribunal concluyó que, ya que el Banco había referido a la señora Umpierre Biascoechea al Fondo por el alegado hostigamiento sexual, el término prescriptivo comenzaba a transcurrir en la fecha cuando el Fondo determinó que su condición no estaba relacionada con el empleo. Es decir, que la fecha a partir de la cual se computaría el término de un año para instar la correspondiente reclamación judicial era el 19 de julio de 2001. Véase Apéndice, págs. 348-349.
Inconformes con dicha determinación, los peticionarios acudieron al Tribunal de Apelaciones para solicitar, inter alia, la desestimación del presente pleito por estar prescrita la reclamación. El foro apelativo intermedio resolvió que el término prescriptivo en el caso de autos quedó interrumpido al acudir la perjudicada al Fondo y comenzó a transcurrir nuevamente a partir de la resolución final de dicha agencia. El tribunal utilizó como fundamento nuestras decisiones en Padín v. Cía. Fomento Ind., 150 D.P.R. 403 (2000), y en Vega v. J. Pérez & Cía., Inc., 135 D.P.R. 746 (1994). Por tal razón, se confirmó al tribunal de instancia, concluyendo que la presente causa de acción fue incoada dentro del término provisto de un año.
*211 Insatisfecho aún, los peticionarios presentaron un recurso de certiorari ante este Tribunal. En éste sostuvieron que el tribunal a quo erró “al concluir que la reclamación ... por alegados daños y perjuicios por hostigamiento sexual no estaba prescrita, porque el plazo prescriptivo de un (1) año quedó interrumpido al acogerse la demandante a las disposiciones de la Ley de Compensaciones por Accidentes del Trabajo y hasta tanto el Fondo del Seguro del Estado no emitiese su determinación sobre si la reclamación era o no compensable”. Petición de certiorari, pág. 9. Expedimos.
II
Los dos asuntos principales por resolver en esta ocasión son: primero, ¿cuándo comienza a correr el término prescriptivo en una causa de acción por hostigamiento sexual en su modalidad de ambiente hostil?; segundo, si la referida reclamación se interrumpe cuando la empleada agraviada es referida por su patrono al Fondo para recibir tratamiento médico por los alegados daños sufridos como consecuencia del ambiente hostil que invoca.
A. La Constitución del Estado Libre Asociado de Puerto Rico, en su Art. II, Sec. 1, L.P.R.A., Tomo 1, ed. 1999, pág. 257, establece que “[l]a dignidad del ser humano es inviolable” y proscribe el discrimen por motivo de raza, color, sexo, nacimiento, origen o condición social, ideas políticas o religiosas. Siguiendo este mandato constitucional, la Asamblea Legislativa ha aprobado variada legislación de naturaleza indemnizatoria dirigida a implantar la política pública del Estado contra el discrimen incluyendo, en lo que nos concierne, el discrimen por razón de sexo.
Entre las leyes aprobadas se encuentra la Ley Núm. 69, ante, la cual proscribe, específicamente, el discrimen en el empleo por razón de sexo. Posteriormente, la Asamblea Le *212 gislativa promulgó la Ley Núm. 17, ante, mejor conocida como la Ley de Hostigamiento Sexual en el Empleo (Ley Núm. 17). Ésta persigue la erradicación del hostigamiento sexual del taller de empleo y establece, entre otras cosas, una causa de acción en daños por su violación. Art. 11 de la Ley Núm. 17 (29 L.P.R.A. sec. 155j).(4)
Ninguna de las disposiciones legales antes mencionadas, sin embargo, proveyó de un término prescriptivo para instar la reclamación civil que autorizaban. En vista de ello, en Suárez Ruiz v. Figueroa Colón, 145 D.P.R. 142 (1998), nos dimos a la tarea de atender dicha omisión y establecimos que el término en cuestión era de un año. A tales efectos, expresamos lo siguiente:
Por constituir la Ley de Discrimen en el Empleo por Razón de Sexo [Ley Núm. 69] y la Ley de Hostigamiento Sexual en el Empleo [Ley Núm. 17] parte de un esquema legislativo dirigido a erradicar el discrimen por razón de sexo en el empleo, por éstas reconocer acciones de carácter indemnizatorio de naturaleza similar a las acciones instadas a tenor de la Ley Núm. 100, supra, y a acciones según el Art. 1802 del Código Civil, 31 L.P.R.A. see. 5141, y por iguales fundamentos a los esbozados en Olmo v. Young & Rubicam of P.R., Inc., supra, resolvemos que en ausencia de disposición legislativa, el término prescriptivo de las acciones instadas a tenor de las mencionadas leyes es el de un (1) año. (Enfasis nuestro.) Suárez Ruiz v. Figueroa Colón, ante, págs. 149-150.
Como sabemos, el propósito de la prescripción es fomentar el pronto reclamo de los derechos a la vez que se procura la tranquilidad del obligado frente a la eterna pen *213 dencia de una acción civil en su contra. La prescripción extintiva procura castigar la inercia en el ejercicio de los derechos, pues ello da lugar a una presunción legal de abandono, lo que conjuntamente con la exigencia de nuestro ordenamiento jurídico para eliminar la incertidumbre de las relaciones jurídicas, constituyen los basamentos de la prescripción extintiva. Véanse: Ortiz v. P.R. Telephone, 162 D.P.R. 715 (2004); Vera v. Dr. Bravo, 161 D.P.R. 308 (2004). Véanse, además: J. Santos Briz, Tratado de Derecho Civil, Barcelona, Ed. Bosch, 2003, T. 1, pág. 763; L. Diez-Picazo y Ponce de León, La prescripción extintiva en el Código Civil, y en la jurisprudencia del Tribunal Supremo, Madrid, Ed. Thomson-Civitas, 2003; J. Puig Brutau, Caducidad, Prescripción Extintiva y Usucapión, 3ra ed., Barcelona, Ed. Bosch, 1996, pág. 32; L. Diez-Picazo, La prescripción en el Código Civil, Barcelona, Ed. Bosch, 1964, pág. 93.
En nuestra jurisdicción, la prescripción constituye un derecho sustantivo (Maldonado v. Russe, 153 D.P.R. 342, 347 (2001); Vega v. J. Pérez & Cía., Inc., ante, pág. 753) que acarrea la desestimación de cualquier demanda presentada fuera del término establecido por ley. Rimco, Inc. v. Pérez y Cía. de P.R., Inc., 148 D.P.R. 60, 65 (1999).
De ordinario, el término prescriptivo comienza a transcurrir desde que el agraviado tuvo conocimiento del daño y pudo ejercitar su causa de acción, lo que no necesariamente coincide con el momento en que se sufre el daño reparable. Santiago v. Ríos Alonso, 156 D.P.R. 181, 189 (2002), y casos allí citados. Véase, además, Art. 1868 del Código Civil, 31 L.P.R.A. sec. 5298; Puig Brutau, op. cit., págs. 68-70. Como ya hemos indicado en el pasado, el plazo para la prescripción no transcurre contra quien por imposibilidad física, por ignorancia del hecho causante del perjuicio o por ignorancia de que puede ejercitar una acción, no ejerce su derecho. Si tal ignorancia es producto de la negligencia o el descuido del reclamante, no se aplaza el *214 comienzo del transcurso del término. Colón Prieto v. Géigel, 115 D.P.R. 232, 244 (1984).
La pregunta que tenemos que hacernos en esta ocasión es cuál es el punto de partida —o momento inicial— del cómputo (dies a quo) de la acción civil por hostigamiento sexual, de suerte que podamos determinar si la reclamación instada en este caso se ajustó a dicho término. Hemos reconocido que el momento exacto en que se conoce, o se debió conocer el daño, constituye un delicado problema de prueba e interpretación, debido a la variedad de “circunstancias en que se da el problema del conocimiento del daño”. Galib Frangie v. El Vocero de P.R., 138 D.P.R. 560, 574 (1995). Véanse, también: Delgado Rodríguez v. Nazario de Ferrer, 121 D.P.R. 347, 360 (1988); Rivera Encarnación v. E.L.A., 113 D.P.R. 383, 385-386 (1982). Hechos distintos requerirán soluciones diversas. Esta determinación es particularmente delicada cuando se trata de daños producidos por un período prolongado de tiempo, como por ejemplo, los llamados “daños continuados”. Diez-Picazo y Ponce de León, op. cit., pág. 246 (“La determinación del momento inicial de la prescripción suscita dificultades en los casos que se pueden llamar de daños continuados o de daños con secuela”).
El daño continuado se refiere a aquellos “producidos por uno o más actos culposos o negligentes imputables al actor, coetáneos o no, que resultan en consecuencias lesivas ininterrumpidas, sostenidas, duraderas sin interrupción, unidas entre sí, las cuales al ser conocidas hace también que se conozca —por ser previsible— el carácter continuado e ininterrumpido de sus efectos, convirtiéndose en ese momento en un daño cierto compuesto por elementos de daño actual (aquel que ya ha acaecido), y de daño futuro previsible y por tanto cierto”. H.M. Brau Del Toro, Los daños y perjuicios extracontractuales en Puerto Rico, 2da ed., San Juan, Pubs. JTS, 1986, Vol. II, Cap. X, pág. 648. Véase Santiago v. Ríos Alonso, ante, pág. 191. En estos casos nos *215 enfocamos más en la causa de los daños que en el evento dañoso en particular. Es decir, el principio que anima la doctrina del daño continuado no descansa en la naturaleza intrínseca del perjuicio ocasionado por la perturbación, sino en el carácter continuo o progresivo de la causa que lo ocasiona, la cual renueva constantemente la acción dañosa.
Este tipo de daños lo produce uno o más actos negligentes o culposos que, llegado determinado momento, la agraviada logra percatarse que las consecuencias lesivas ocasionadas continuarán en el futuro. En ese momento, por convertirse en un daño cierto, sobreviene una sola causa de acción resarcitoria por todas las consecuencias lesivas ininterrumpidas y sostenidas. Bajo esta categoría, los daños derivados del acto ilícito se estiman como una unidad y no como una pluralidad de daños particulares.
De lo anterior se coligen tres factores que caracterizan el daño continuado, a saber: (1) un acto o varias actuaciones negligentes o culposas;(5) (2) que dichos actos unidos entre sí causen daños ininterrumpidos y sostenidos, y (3) que sea previsible que los daños continúen en el futuro. Este tercer criterio supone que existen unos daños “actuales” junto a otros que son “previsibles”, aunque estos últimos no se verifiquen. Ello hace entonces que todos los daños sean ciertos. La certeza se fundamenta en que la afectada, una vez advierte de la naturaleza de los agravios ya experimentados y constata que éstos tienen un patrón y están unidos por ser el resultado de una misma causa, logra comprender y puede razonablemente prever que de mantenerse vigente la causa continuará sufriendo daños de la misma naturaleza.
La doctrina civilista moderna postula que ante la imposibilidad de fraccionar en etapas distintas los actos culpo *216 sos o negligentes, ya que como hemos visto los daños continuados se producen sucesiva e ininterrumpidamente, el inicio del plazo prescriptivo para reclamar por estos daños comienza en el momento de la producción del resultado definitivo o hasta que se verifique el último de los actos. Ello naturalmente presupone que ésta no confronta obstáculo alguno para ejercitar su causa de acción. Véanse: I. Sierra Gil de la Cuesta, Comentario del Código Civil, Barcelona, Ed. Bosch, 2000, T. 9, pág. 554; J.L. Lacruz Berdejo, Elementos de Derecho Civil II: derecho de obligaciones, 3ra ed., Barcelona, Ed. José María Bosch, 1995, Vol. 2, pág. 518; F. Reglero Campos en M. Albaladejo, Comentarios al Código Civil y compilaciones forales, Madrid, Ed. Rev. Der. Privado, 1994, T. XXV, Vol. 2, pág. 458.
Es decir, en caso de daños continuados el cómputo del plazo de prescripción no se inicia sino hasta la producción del resultado definitivo. Comentando el tenor de la jurisprudencia del Tribunal Supremo español, el profesor Diez-Picazo y Ponce de León señala lo siguiente: "Las sentencias más modernas ... se inclinan por la idea de que el comienzo del plazo de prescripción se produce con la verificación total del daño ...” (Énfasis nuestro.) Diez-Picazo y Ponce de León, op. cit., pág. 246.(6)
*217 Nuestra jurisprudencia revela un criterio parecido al español. En Capella v. Carreras, 57 D.P.R. 258 (1940), resolvimos que los estorbos producen un daño continuo cuya causa de acción no comienza a prescribir hasta que cese el estorbo. Indicamos expresamente que cuando “se trata de daños y perjuicios causados por actos continuos ... [éstos] están latentes hasta que cesa la causa que los genera .... [E]n tal caso la acción dañosa se renueva de día en día ...”. (Enfasis nuestro.) Id., pág. 266. Posteriormente nos reafirmamos en esta doctrina. E.g.: Arcelay v. Sánchez, 77 D.P.R. 824, 837-839 (1955) (son daños continuados aquellos generados por los ruidos y pestes que producía una planta pasteurizadora); Seda v. Miranda Hnos. & Co., 88 D.P.R. 355, 361 (1963) (son daños continuados los ocasionados por una chimenea que despedía humos y ruidos).
A un resultado análogo llegamos en Santiago v. Ríos Alonso, ante, donde resolvimos que el término prescriptivo de una acción torticera derivada de la violencia doméstica tuvo su inicio cuando cesó dicha conducta. Estas decisiones, por supuesto, estuvieron matizadas por hechos particulares y por el interés público en evitar los estorbos y combatir la violencia doméstica. No dejan, sin embargo, de apoyar la norma general que el término prescriptivo de las acciones sobre daños continuos comienza a transcurrir cuando se ha verificado la previsibilidad del daño y el fin de la conducta ilícita.(7) Véase, además, C.J. Irizarry Yun *218 qué, Responsabilidad Civil Extracontractual, 4ta ed., edición del autor, 2000, pág. 730.
Pasemos en este momento a reseñar las características de la acción por hostigamiento sexual en su modalidad de ambiente hostil, para luego determinar la naturaleza del daño resultante.
B. La delimitación del concepto concreto de acoso sexual en el trabajo presenta variadas dificultades debido a la complejidad de las relaciones interpersonales. No empece, hemos reconocido dos modalidades de hostigamiento sexual, a saber: el hostigamiento sexual por ambiente hos-til y el llamado “hostigamiento equivalente”, o quid pro quo. Según la primera vertiente —la que nos ocupa— “el hostigamiento sexual se produce cuando la conducta sexual para con un individuo tiene el efecto de interferir irrazonablemente con el desempeño de su trabajo o de crear en el mismo un ambiente intimidante, hostil u ofensivo”. Rodríguez Meléndez v. Sup. Amigo, Inc., 126 D.P.R. 117, 131-132 (1990). La conducta puede afectar el funcionamiento y la efectividad de la víctima en el empleo, desalentar al empleado a permanecer en éste y dificultarle el progreso en su carrera. Véase Art. 3(c) de la Ley Núm. 17 (29 L.P.R.A. sec. 155b(c)). Véase, además, S.L.G. Afanador v. Roger Electric Co., Inc., 156 D.P.R. 651, 662 (2002); In re Robles Sanabria, 151 D.P.R. 483, 492 (2000).
Estas particularidades de la causa de acción hacen que no sea fácilmente discernible, por lo que se dificulta establecer una regla rígida para establecer cuándo comienza a transcurrir el plazo prescriptivo. Adviértase, además, que la ley establece que para determinar si una alegada conducta constituye hostigamiento sexual en el empleo se considerará la totalidad de las circunstancias en que ocurrie *219 ron los hechos. Es decir, es una determinación que se hace caso a caso. Art. 4 de la Ley Núm. 17 (29 L.P.R.A. see. 155c).
Antes bien, por su propia naturaleza, el ambiente hostil involucra varios actos acaecidos durante un período de tiempo, que crean un ambiente de tal naturaleza perniciosa como para violar la ley. A estos efectos, expresamos en In re Robles Sanabria, ante, pág. 500, lo siguiente:
Para establecer un caso prima facie de hostigamiento sexual por ambiente hostil, la parte promovente de la acción “debe probar que ha ocurrido más de un incidente de conducta sexual ofensiva”. Un acto aislado o un mero “piropo”, aunque pudiera ser no deseado, no origina una causa de acción bajo esta modalidad. De ahí que se diga que el hostigamiento por ambiente abusivo se caracteriza por su multiplicidad. (Citas omitidas y énfasis nuestro.)
Son los actos repetidos de naturaleza hostigadora que unidos entre sí o vistos en conjunto, crean el ambiente abusivo y hostil, ya que cada acto por sí solo podría no ser lo suficientemente severo como para justificar una reclamación por hostigamiento sexual. Habida cuenta que los daños se configuran por la concatenación de varios eventos aislados, que unidos entre sí configuran un patrón de comportamiento que procura un particular estado de aprehensión en la perjudicada, debemos concluir que éstos necesariamente están enmarcados dentro de la categoría de daños continuados. E.g., Santiago v. Ríos Alonso, ante. Es evidente que hay una gran simetría o afinidad entre los daños reclamados a causa de un ambiente hostil y la doctrina del daño continuado. Recordemos, como ya apuntamos, que en casos de daños continuados la atención se centra en el ambiente que ha producido la conducta proscrita, que es la causa de los daños, y no en los actos por separado que contribuyen a crear ese ambiente, que son los eventos dañosos en particular.
A la luz de lo anterior, resolvemos que en el presente caso el término prescriptivo de un (1) año para instar la *220 reclamación de hostigamiento sexual por ambiente hostil comenzó a transcurrir a partir del 4 de febrero de 2000, fecha cuando la señora Umpierre Biascoechea, por motivo de un incidente que estimó hostigante con su supervisor inmediato, decidió no regresar a su trabajo. Es en este momento que finalizaron los eventos o actos de alegado hostigamiento. Una vez la recurrida no regresó a su trabajo, cesó de estar expuesta al acto que le producía, de acuerdo con su alegación, los daños por los que reclamaba. Es decir, al no estar en su empleo ella no estaba expuesta a un ambiente hostil. Siendo imposible entonces la ocurrencia de nuevos actos de naturaleza hostigante, el punto de partida para el cómputo de la prescripción es el día que cesó de acudir a su empleo, por ser ése el momento en que finalizó la alegada conducta prohibida.
La recurrida nos arguye que el término debe computarse a partir de la fecha cuando sometió su carta de renuncia. No compartimos ese criterio. Ya para esa fecha la peticionaria no estaba expuesta al alegado ambiente hostil por el cual reclamó judicialmente, en este caso, no podemos adoptar como punto de partida una fecha en la cual había cesado la conducta proscrita y se había producido ya el resultado definitivo del daño sufrido.
Esta postura es la que mejor se ajusta a las particularidades de la causa de acción por hostigamiento sexual en la modalidad de ambiente hostil, procurando así hacer efectiva la política pública que anima la Ley de Hostigamiento Sexual en el Empleo. Al así resolver, tomamos en consideración que la prescripción es un instituto flexible que nos permite adecuar su alcance conforme las circunstancias, de suerte que se procure hacer cumplida justicia. “El Derecho representa no s[ó]lo lucha contra la injusticia, sino también por más justicia.” (Énfasis en el original.) M. Zavala de González, Actuaciones por Daños, Buenos Aires, Ed. Hammurabi, 2004, pág. 239. Véase Vega v. J. Pérez & Cía., Inc., ante, pág. 754.
*221 Conviene observar que la norma acogida responde, no sólo a nuestra jurisprudencia, sino también a los propósitos de la prescripción extintiva. Esta viene a salvar la confianza de los deudores en la apariencia que genera la inercia del deudor conforme exige la equidad. También protege al demandado de las reclamaciones cuyo expediente evidenciario ha desaparecido y fomenta la estabilidad de las relaciones jurídicas.
Así mal puede sostener el causante de un daño continuo que la equidad vindica su confianza en la inercia del deudor durante aquel periodo de tiempo en que tuvo lugar su conducta reñida con la equidad. Igualmente, la pérdida del expediente evidenciario que pueda ocurrir en estos casos habrá de ser atenuada, debido a la persistencia de la conducta, y responderá en gran medida a las acciones del propio demandado y no exclusivamente a la inercia del deudor.
La norma acogida también procura una mayor estabilidad de las relaciones jurídicas. Evidentemente, la previsibilidad de un daño continuo puede configurarse antes de culminar la conducta dañina como, por ejemplo, cuando se configura un “ambiente hostil” que dura varios años. He-mos reconocido, sin embargo, que a menudo resulta difícil determinar el momento preciso de la previsibilidad, e.g., el día que surgió un ambiente hostil. Tal dificultad hace incierta e inestable las relaciones jurídicas en estos casos. Al añadirse el requisito de que haya cesado la conducta dañosa, se podrá determinar con mayor precisión cuándo comienzan a correr los correspondientes términos prescriptivos, abonando así la estabilidad jurídica.
Conforme lo discutido anteriormente y al aplicarlo a los hechos de este caso, habría que concluir que la demanda instada estaba prescrita. Ahora bien, el Tribunal de Apelaciones resolvió que la reclamación judicial no estaba prescrita, ya que ésta quedó interrumpida por el referido hecho al Fondo de Seguro del Estado. Tenemos entonces que evaluar este señalamiento. Veamos.
*222 hH h—I HH
Como apuntamos anteriormente, con la prescripción se pretende propiciar el pronto reclamo de un derecho, a la vez que procura ponerle coto a la incertidumbre de una posible reclamación contra el obligado. Colón Prieto v. Géigel, ante, pág. 243.
En conformidad con el Art. 1873 del Código Civil, 31 L.P.R.A. see. 5303, el término para instar una reclamación se interrumpe por su ejercicio ante los tribunales, por la reclamación extrajudicial del acreedor y por cualquier reconocimiento de deuda por parte del deudor. Díaz de Diana v. A.J.A.S. Ins. Co., 110 D.P.R. 471 (1980); Díez-Picazo, op. cit, pág. 109. La reclamación extrajudicial que interrumpe el término prescriptivo de una acción puede manifestarse a través de variadas acciones, ya que la ley no exige una forma especial para efectuarlas.
No obstante, toda reclamación extrajudicial debe cumplir con los siguientes requisitos para que tenga el efecto interruptor de la prescripción, a saber: (1) debe ser oportuna, lo que exige que se presente dentro del término establecido; (2) el reclamante debe poseer legitimación, por lo que la reclamación la debe ejercitar el titular del derecho o de la acción cuya prescripción pretende interrumpir; (3) el medio utilizado para realizar la reclamación debe ser el idóneo para ello, y (4) debe existir identidad entre el derecho reclamado y aquel afectado por la prescripción. Maldonado v. Russe, ante, pág. 353.
Hemos resuelto que la presentación de una querella administrativa puede considerarse como una forma de interrupción judicial. E.g.: Matos Molero v. Roche Products, Inc., 132 D.P.R. 470, 486 (1993); Srio. del Trabajo v. F.H. Co., Inc., 116 D.P.R. 823, 824 (1986). Cuando ello ocurre, el término queda congelado durante la pendencia del trámite administrativo y comienza a computarse nuevamente al cesar la causa interruptiva, es decir, cuando se produce la *223 acción final de la agencia. Suárez Ruiz v. Figueroa Colón, ante, págs. 146-147; De Jesús v. Chardón, 116 D.P.R. 238 (1985).
En Srio. del Trabajo v. F.H. Co., Inc., ante, resolvimos que la presentación de una querella administrativa ante la Unidad Antidiscrimen del Departamento del Trabajo y Recursos Humanos interrumpía el término prescriptivo para instar una reclamación de discrimen bajo la Ley Núm. 100 de 30 de junio de 1959, según enmendada, 29 L.P.R.A. see. 146 et seq. Reconocimos que la propia Ley Núm. 100 deposita en el Secretario del Trabajo y Recursos Humanos el deber de velar por el cumplimiento de las disposiciones contra el discrimen consignadas en la ley. En Matos Molero v. Roche Products, Inc., ante, llegamos a idéntico resultado respecto a una reclamación de discrimen instada ante la Oficina de Igualdad de Oportunidades en el Empleo (EEOC, por sus siglas en inglés), al concluir que, para efectos prácticos, presentar un cargo ante la EEOC equivale a presentar el cargo ante la Unidad Antidiscrimen del Departamento del Trabajo y Recursos Humanos.
En ambas ocasiones fundamentamos nuestra decisión en dos criterios, a saber: primero, la existencia de una identidad de propósitos entre la acción administrativa y la civil; segundo, que la notificación de la querella al patrono constituyó una reclamación extrajudicial bastante para interrumpir la prescripción.
Por otro lado, en Suárez Ruiz v. Figueroa Colón, ante, se solicitó que extendiéramos la norma anteriormente esbozada a un procedimiento interno creado por el patrono para dilucidar quejas relacionadas con discrimen en el empleo, específicamente, querellas sobre hostigamiento sexual. Luego de analizar los requisitos antes mencionados, concluimos que la querella presentada ante el foro patronal no tuvo el efecto interruptor deseado. Indicamos que “[e]l propósito de este tipo de acción judicial [la reclamación judicial por hostigamiento sexual] es imponer una res *224 ponsabilidad civil y criminal al patrono, mientras que el trámite interno ante el patrono tiene como propósito investigar los casos de alegado hostigamiento sexual en el empleo y, de ser necesario, tomar las medidas disciplinarias y correctivas correspondientes”. íd., pág. 153. Además, apuntamos que la acción judicial persigue el resarcimiento del agraviado, mientras que el procedimiento interno sólo persigue “disciplinar al empleado hostigador y ... eliminar cualquier ambiente hostil en el empleo”. íd., pág. 154. Nos negamos así a concluir que la querella presentada tuvo efecto interruptor alguno sobre el término prescriptivo para instar la correspondiente acción judicial.
Adicionalmente, en Maldonado v. Russe, ante, concluimos que la presentación de una querella ante el Negociado de Normas de Trabajo (Negociado) del Departamento del Trabajo por, entre otras cosas, discrimen debido a la condición de embarazo, no interrumpía el término prescriptivo para instar la reclamación judicial correspondiente. Ello es así ya que el Negociado no estaba “facultado para investigar las acciones de discrimen reconocidas por las diversas legislaciones laborales, pues tal prerrogativa corresponde a la Unidad Antidiscrimen del Departamento del Trabajo”, íd., pág. 355.(8)
En el caso de marras se nos ha planteado que el referido al Fondo de Seguro del Estado tuvo el efecto de interrumpir el término prescriptivo, por lo que no fue sino hasta la decisión final del Fondo cuando comenzó a transcurrir el término para reclamar judicialmente. Para atender este señalamiento, pasemos a evaluar el esquema regulador especial creado por la Ley de Compensaciones por Accidentes *225 del Trabajo, a fin de determinar si el proceso administrativo ante el Fondo persigue propósitos afines a la reclamación judicial por actuaciones discriminatorias constitutivas de hostigamiento sexual.
IV
La Ley del Sistema de Compensaciones por Accidentes del Trabajo (Ley de Compensaciones), Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 L.P.R.A. sec. 1 et seq., concede inmunidad absoluta a los patronos asegurados con el Fondo contra cualquier acción de daños y perjuicios que el obrero o empleado de ordinario pudiera instar en su contra en relación con accidentes laborales que originaron la lesión.(9) Esta legislación de carácter remedial establece un esquema de aportación patronal compulsoria con el propósito de proveerle a los obreros que sufren alguna lesión o enfermedad ocurrida en el curso del trabajo y como consecuencia de éste, un remedio rápido y eficiente, libre de las complejidades de una reclamación judicial ordinaria. Martínez v. Bristol Myers, Inc., 147 D.P.R. 383, 392-393 (1999); Soc. de Gananciales v. Royal Bank de P.R., 145 D.P.R. 178 (1998).
Tal esquema provee una responsabilidad objetiva social que pretende evitar que los empleados queden en una situación de desamparo al tener que demostrar en un juicio la negligencia del patrono para poder ser indemnizados. Martínez v. Bristol Myers, Inc., ante, págs. 392—393; Santiago Hodge v. Parke Davis Co., 126 D.P.R. 1, 9 (1990). Así *226 pues, sin importar el grado de negligencia atribuible al patrono, el único remedio que tiene un obrero por una lesión ocurrida en el empleo es precisamente el que se dispone en la Ley de Compensaciones. Art. 20 de la Ley de Compensaciones, 11 L.P.R.A. sec. 21. Ello es así, claro está, siempre y cuando el patrono esté asegurado.
Es menester enfatizar que la protección laboral “se ex-tiende [exclusivamente] a las lesiones sufridas como consecuencia de accidentes que provengan de cualquier acto o función inherente al trabajo de un empleado u obrero, que ocurran en el curso de dicho trabajo o como consecuencia de éste”. Lebrón Bonilla v. E.L.A., 155 D.P.R. 475, 484 (2001). Véase Ortiz Pérez v. F.S.E., 137 D.P.R. 367, 373 (1994). Debido a ello, la Ley de Compensaciones no aplica a las lesiones del trabajador producidas intencionalmente por el patrono, como lo son las prácticas discriminatorias, ya que éstas no se pueden considerar como inherentes al empleo o relacionadas con éste. Soc. de Gananciales v. Royal Bank de P.R., ante, pág. 196; Alonso García v. Comisión Industrial, 102 D.P.R. 689, 695-699 (1974). Con enorme claridad indicamos lo siguiente en Odriozola v. S. Cosmetic Dist. Corp., 116 D.P.R. 485, 501 (1985): “No puede alegarse seriamente que una práctica discriminatoria sea inherente al empleo. Tampoco proviene de un acto del obrero, sino de una actuación del patrono.... Tan ajeno al trabajo es el discrimen que se ha creado en Puerto Rico una ley especial para castigarlo: la Ley Núm. 100.” Antes bien, al no ser compensables los daños producidos por el discrimen no opera la inmunidad patronal y exclusividad de remedios que ordena la legislación laboral. Id.
A la luz de la discusión que antecede no podemos concluir que exista identidad de propósitos entre la acción judicial para reclamar por hostigamiento sexual en el empleo en la modalidad de ambiente hostil, y el esquema rehabilitador que provee el Fondo. Adviértase, como señalamos, que la reclamación ante el Fondo persigue proveer sosteni *227 miento económico y tratamiento médico adecuado al empleado que ha sufrido daños por un accidente o lesión en el trabajo. Sin embargo, bajo ningún supuesto ese daño puede ser de naturaleza intencional como lo es el discrimen, pues éstos no son daños inherentes al empleo.
La acción judicial basada en la Ley Núm. 17 es precisamente el mecanismo disponible al empleado para resarcir su daño. Por lo tanto, ésta provee el remedio que no atiende el Fondo. Siendo ello así, no existe identidad de propósitos entre la acción administrativa ante el Fondo y la acción judicial, instada al amparo de la Ley Núm. 17, que nos permita resolver que la acción ante el Fondo tuvo el efecto de interrumpir el término prescriptivo aplicable en este caso.
Ciertamente, el patrono tiene un deber legal de referir al Fondo a un empleado que le dice que ha sufrido un daño como consecuencia de un incidente ocurrido mientras trabajaba. 11 L.P.R.A. sec. 14. Pero, cuando se trata de hostigamiento sexual, por haber sido esta causa expresamente excluida de los beneficios del Fondo, el empleado agraviado tiene una acción distinta e independiente ante el tribunal cuya prescripción empieza a partir del último incidente de hostigamiento.
En virtud de lo antes expuesto, resulta forzoso concluir que la reclamación judicial por hostigamiento sexual instada por la señora Umpierre Biascoechea no quedó “congelada” por haber sido ésta referida al Fondo.(10) Siendo ello así y no habiéndose presentado la correspondiente reclamación dentro del año previsto para ello, la demanda instada estaba prescrita.
Finalmente, debemos indicar que tanto el foro primario como el tribunal apelativo intermedio concluyeron que, a la luz de nuestros dictámenes en Padín v. Cía. Fom. Ind., *228 ante, y en Vega v. J. Pérez & Cía., Inc., ante, el término para instar la acción en este caso se había interrumpido con el referido al Fondo. Erraron al resolver así. Ninguno de dichos casos trataba sobre la interrupción extrajudicial de un término prescriptivo. En Padín v. Cía. Fom. Ind., ante, y en Vega v. J. Pérez & Cía., Inc., ante, se planteó, respectivamente, cuándo comenzaba para un obrero el término para instar una reclamación judicial contra un tercero responsable o contra un patrono no asegurado. Lo allí dispuesto no aplica al asunto sobre cómo se interrumpe administrativamente un plazo prescriptivo.
V
Por los fundamentos antes expuestos, procede revocar el dictamen del Tribunal de Apelaciones y desestimar la reclamación instada, por lo que estoy conforme con la sentencia dictada.

 No surge claramente de los autos si la recurrida Umpierre Biascoechea le comunicó a sus superiores en esa reunión sobre el patrón de hostigamiento al que fue alegadamente sometida.

 Véase Decisión del Administrador Sobre: Relación Causal —Compensabilidad— Condición Emocional No Relacionado, Apéndice, pág. 181.

 Existe una alegada controversia de hecho en cuanto a la fecha exacta en que se notificó la renuncia de la recurrida al Banco Popular. Según consta en el expediente, la carta de renuncia tiene fecha a manuscrito de 12 de marzo de 2000. Sin embargo, en un documento preparado por el Banco Popular, titulado Alegación Hostigamiento Sexual María Umpierre v. Jesús Cáez, aparece que la referida carta de renuncia fue entregada el 13 de marzo de 2001. En vista de la conclusión a que llegamos, la referida “controversia” es claramente inconsecuente para la solución del caso.

 Ante todo, el hostigamiento sexual es una de las manifestaciones típicas de la violencia de género, reflejo de discrimen y de desigualdad. El acoso sexual es una expresión moderna con la que se designa un problema antiguo y de los más importantes con el que las mujeres han de enfrentarse en el trabajo, lo que no significa que sean las mujeres las únicas víctimas del acoso.
Es una práctica ilegal e indeseable que atenta contra la dignidad del ser humano. De ahí la clara política pública que condena este comportamiento y le impone al patrono un deber afirmativo y continuo, hasta que el empleado cesa de trabajar, de velar por que este comportamiento no se suscite en el ambiente de trabajo.

 Este primer elemento coloca dentro del concepto “daños continuados” la situación de que un acto culposo atribuible a cierta persona o entidad es la causa próxima de una serie de daños resultantes. Es decir, que los daños en cuestión tienen una causa común. Agosto v. Mun. de Río Grande, 143 D.P.R. 174, 184-185 (1997).

 Sobre este particular, confróntese la siguiente jurisprudencia que versa sobre la prescripción en situaciones que involucran daños de carácter continuo. E.g.: STS 10 de septiembre 1986 (“Debe indicarse que es doctrina igualmente constante de esta Sala que la computación de los plazos iniciales en la prescripción, no puede comenzar sino a partir de que concluyan las actuaciones o presupuestos fácticos en que se apoye el ejercicio de la acción esgrimida ...”) (énfasis nuestro); STS 12 diciembre 1980 (A. 4747) (“En los casos de comportamiento ilícito continuado ... no ha dejado de sostener la doctrina científica el criterio de que el día inicial de la prescripción será no el del comienzo del hecho sino el de su verificación total ... parece justo iniciar el cómputo del tiempo para la posible reacción contra el acto antijurídico el de su plena efectividad e incluso el de su cesación ...”) (énfasis en el original suprimido y énfasis nuestro); STS 27 junio 1990 (A. 4900) (“Por ser los daños de que se trata de los denominados continuados, esto es, aquellos que continuamente se están operando y produciendo, respecto de los cuales la Jurisprudencia de la Sala tiene declarado que ‘el cómputo del plazo de prescripción no se inicia hasta la producción del definitivo resultado, cuando no es posible fraccionar en etapas diferentes o hechos diferenciados la serie proseguida’ ... no resultando siempre fácil determinar en la práctica cuándo se produce o ha producido ese ‘definitivo resultado’ que en relación con el concepto de daños continuados se nos ofrece como algo vivo, latente y conectado *217 precisamente a la causa originadora y determinante de los mismos, que subsiste y se mantiene hasta su adecuada corrección”). Véanse, también: STS 21 marzo 2005 (A. 3878); STS 24 mayo 1993 (A. 3727).

 Galib Frangie v. El Vocero de P.R., 138 D.P.R. 560 (1995), no contradice cabalmente el principio aludido. Allí se planteó que una serie de artículos periodísticos produjeron un daño continuo cuya causa de acción estuvo sujeta a la prescripción desde la fecha del último artículo. Indicamos al respecto “[que] las características señaladas, [respecto los daños en dicho caso], no son suficientes para constituir un daño continuo”. (Enfasis nuestro.) Id., pág. 574. Luego expresamos que “[l]o determinante [en cuanto a los daños continuos] es el momento cuando comienza la producción de los daños, que deberá tomarse en consideración como el inicio del término de prescripción, al presuponer que los perjudicados los conocían desde entonces y que pudieran ejercitar la causa de acción”. (Enfasis suprimido.) Id., pág. 575. Empero, habiéndose resuelto que no existía tal daño, estas expresiones consti *218 tuyeron un obiter dictum que no debe oponerse al análisis más deliberado de Capella v. Carreras, 57 D.P.R. 258 (1940), Arcelay v. Sánchez, 77 D.P.R. 824 (1955), Seda v. Miranda Hnos. & Co., 88 D.P.R. 355 (1963), y Santiago v. Ríos Alonso, 156 D.P.R. 181 (2002). Cfi, J.J. Álvarez González, Responsabilidad Civil Extracontractual, 72 (Núm. 3) Rev. Jur. U.P.R. 615, 638-642 (2003).

 En Cintrón v. E.L.A., 127 D.P.R. 582 (1990), interpretamos que el término prescriptivo de un (1) año para incoar la acción por violación a derechos civiles no quedó interrumpido cuando el empleado destituido de su puesto acudió a Junta de Apelaciones del Sistema de Administración de Personal. Procedimos así pues las disposiciones legales aplicables no concedían a la agencia la facultad de responsabilizar civilmente a los patronos y sus remedios se limitaban a la reinstalación y los haberes dejados de percibir del empleado, remedios que se imponen al patrono y no necesariamente al causante del daño.

 Hemos sido enfáticos al extender la inmunidad patronal a los coempleados —oficiales, supervisores, agentes o compañeros empleados— cuyos actos negligentes o culposos hayan sido la causa del accidente, cuando sus actuaciones hayan surgido en el desempeño de los deberes generales de su empleo. González v. Multiventas, 165 D.P.R. 873 (2005); Guzmán v. E.L.A., 156 D.P.R. 693 (2002); Rivera et al. v. Superior Pkg., Inc. et al., 132 D.P.R. 115 (1992). No obstante lo anterior, un oficial, agente o empleado será responsable de acuerdo con el Art. 1802 del Código Civil, 31 L.P.R.A. see. 5141, por los daños sufridos por un compañero empleado cuando el acto negligente sea distinto e independiente del deber del patrono de proveer un lugar seguro de empleo. Guzmán y otros v. De Jesús, 155 D.P.R. 296 (2001).

 Cabe destacar aquí que la demanda en este caso se presentó antes de que el Fondo del Seguro del Estado emitiese su determinación final de que los daños de la señora Umpierre Biascoechea no estaban cubiertos por el Fondo.