Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| SAÚL GONZÁLEZ MADRIGAL<br><br>Querellante<br><br>V.<br><br>AUTORIDAD DE ACUEDUCTOS Y ALCANTARILLADOS DE PR<br><br>Querellados - Recurridos<br><br><br>**HERIBERTA MARTIRENA PÉREZ, VIUDA DE SAÚL GONZÁLEZ MADRIGAL**<br><br>**Recurrente** | KLRA202400578 | *Revisión de Decisión Administrativa* procedente de la Autoridad de Acueductos y Alcantarillados<br><br>Caso Núm.: AA-15-1409<br><br>Sobre: Vista Administrativa<br><br>Cuenta Núm. 21342433 |

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Jueza Romero García y el Juez Rivera Torres

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 21 de noviembre de 2024.

El 16 de octubre de 2024, compareció ante este Tribunal de Apelaciones, la señora Heriberta Martirena Pérez (en adelante, señora Martirena Pérez o parte recurrente), mediante *Revisión Judicial.* Por medio de este, nos solicita que, revisemos la *Resolución* emitida y notificada el 26 de septiembre de 2024, por la Autoridad de Acueductos y Alcantarillados (en adelante, AAA o parte recurrida). En virtud de esta, la parte recurrida declaró No Ha Lugar la *Querella.*

Por los fundamentos que adelante se esbozan, se revoca la *Resolución* recurrida.

### I

De acuerdo surge del expediente, para el año 2015 el señor Saúl González Madrigal (en adelante, señor González Madrigal),

esposo fenecido de la parte recurrente y abonado de la AAA de la cuenta residencial #00021342433-6, recibió múltiples facturas de consumo de agua y alcantarillado de su residencia, ubicada en 2102 Calle Antioquía, Urb. Reparto Apolo en el municipio de Guaynabo. Dichas facturas correspondían a los meses de junio y julio de 2015. En particular, las mismas facturaban la cantidad de $450.99 por mes por consumo de 176 m3. Por otro lado, las facturas de agosto y septiembre de 2015 facturaron la cantidad de $261.92 por mes, para un consumo de 192 m3.

En desacuerdo con lo facturado, el señor González Madrigal mediante su representante legal, objetó dichas facturas. Mediante cartas fechadas 4 de agosto de 2015 y 8 de septiembre de 2024, la AAA le notificó al señor González Madrigal que, luego de realizar una investigación con el propósito de examinar el funcionamiento del contador y de una posible inspección de las instalaciones interiores de la propiedad, se había comprobado que, el contador se encontraba en perfectas condiciones y la lectura era progresiva. A base de ello, la parte recurrida determinó que, los cargos facturados para los meses de junio y julio de 2015 procedían en su totalidad.

El señor González Madrigal apeló tal determinación, y la AAA mediante misiva remitida el 17 de septiembre de 2015, le notificó que, luego de analizar el historial de lecturas y facturaciones, no había encontrado error alguno que ameritara ajustes, conforme a las normas de la AAA. Asimismo, mediante misiva fechada 16 de octubre de 2015, la agencia recurrida le notificó al señor González Madrigal que, no procedía el ajuste a las facturas de agosto y septiembre de 2015, debido a que tampoco encontraron errores en el historial de lecturas. Le apercibió que, de acuerdo a la Ley Núm. 33 del 27 de junio de 1985, según enmendada, contaba con diez (10) días a partir del recibo de la notificación, para pagar los cargos o solicitar una vista administrativa.

A tales efectos, el 12 de septiembre de 2015, el señor González Madrigal presentó la *Solicitud de Vista Administrativa*, por encontrarse en descuerdo con la determinación de la AAA sobre las facturas de los meses de junio y julio de 2015. De igual manera, el 26 de septiembre de 2015, presentó otra *Solicitud de Vista Administrativa*, correspondiente a la determinación de los meses de agosto y septiembre de 2015.

El 8 de noviembre de 2015, y el 14 de noviembre de 2015, la AAA remitió dos notificaciones al señor González Madrigal para expresarle que, en cuanto a las facturas de junio y julio, y de agosto y septiembre de 2015, respectivamente, había sido referido al área de Vistas Administrativas. Asimismo, le notificó que, su cuenta reflejaba un balance de $1,305.82 y que, previo a la celebración de la vista, debía pagar una cantidad igual al promedio de su consumo mensual, según reflejado en sus últimas tres facturas.

No obstante, surge del propio expediente que, no fue sino hasta el **20 de septiembre de 2024** que, la agencia recurrida celebró la vista **solicitada desde septiembre de 2015**. Cabe señalar que, en el ínterin, el señor González Madrigal falleció, y entonces, su esposa, la aquí recurrente, se convirtió en la abonada de la AAA en la cuenta #00021342433-6.

Así las cosas, el 25 de septiembre de 2024, la AAA emitió la *Resolución* cuya revisión nos ocupa. Por medio de esta, emitió los siguientes hechos que no se encontraban en controversia:

1. El Sr. Saúl González Madrigal era el abonado residencial de la cuenta #00021342433-6 con el contador #06106627, localizado en 2102 Calle Antioquia, Urb. Reparto Apolo en Guaynabo.

2. La Autoridad notificó al abonado facturas por consumo de agua y alcantarillado correspondiente a junio y julio de 2015 por 176 m3 que alcanzan la cantidad de $450.99 cada una. También, notificó facturas en agosto y septiembre del mismo año por 102 m3 que totalizan $261.92 cada una.

3.  Oportunamente, el abonado objetó esas facturas y se completó el trámite administrativo para realizar la vista administrativa.

4.  El Sr. González Madrigal falleció y su esposa, Sra. Martinera [sic] Pérez actualizó la cuenta en la Autoridad de Acueductos y Alcantarillados como abonada.

De igual forma, emitió las siguientes determinaciones de hechos:

5.  Durante los dos años anteriores a junio de 2015 el consumo de la cuenta #00021342433-6 fluctuaba entre 30 y 47 m3.

6.  El Maestro Plomero, Sr. Luis R. González Sánchez, Lic. 1150, certificó ausencia de filtración en la tubería de la residencia y verificó funcionamiento de baños, los cuales estaban en perfectas condiciones.

7.  Durante los meses de las facturas objetadas hubo racionamiento de agua durante un día sí y otro no.

8.  Durante el racionamiento de agua la Sra. Martinera [sic] Pérez guardaba 42 galones de agua en la marquesina de la casa, para cuando llegara el agua.

9.  Concluido el racionamiento y la práctica de almacenar agua, no hay factura o consumo de agua de manera similar.

10. El 24 de julio de 2015 personal de la Autoridad verificó el funcionamiento del contador. En ésta se comprobó que el contador se encontraba en perfectas condiciones. La lectura fue progresiva, por lo que ratificaron el cargo facturado.

11. El 4 de septiembre de 2015 se realizó una segunda investigación del contador y de las facilidades de la Autoridad con igual resultado. Al informar el resultado de las investigaciones, la Autoridad exhortó revisar equipos o enseres en la residencia para evitar cualquier pérdida de agua en [e]l interior de la casa.

De acuerdo a lo anterior, la AAA entendió que, "no hubo error al facturar los cargos, toda vez que el contador estaba en perfectas condiciones y no existía p[é]rdida de agua atribuible a la Autoridad". Consecuentemente, declaró No Ha Lugar la querella y confirmó la determinación inicial de la AAA.

Inconforme, la parte recurrente acudió ante este foro y presentó la *Moción Solicitando Orden de Paralización en Auxilio de Jurisdicción.* Igualmente, presentó el recurso de epígrafe donde esgrimió los siguientes señalamientos de error:

- La AAA erró al no considerar la totalidad del expediente y al imputar a la querellante un consumo inusual de agua durante el periodo impugnado. Esta omisión condujo a una evaluación defectuosa de la prueba documental presentada.

- La AAA erró al no considerar las alegaciones de la parte querellante sobre violación al debido proceso de ley por la dilación de los procedimientos, al transcurrir nueve (9) años desde que se solicitó la vista administrativa hasta su celebración y al no adjudicar la objeción a favor de la recurrente.

- La AAA omitió aplicar la prescripción de la deuda establecida en el Código Civil de Puerto Rico, que dispone un plazo de cinco años para exigir el pago de obligaciones.

Mediante *Resolución* emitida el 17 de octubre de 2024, declaramos Ha Lugar la *Moción Solicitando Orden de Paralización en Auxilio de Jurisdicción.* Asimismo, le ordenamos a la AAA que sometiera el expediente administrativo dentro del término de diez (10) días, contados a partir de la notificación de dicha resolución. Además, le concedimos hasta el lunes 18 de noviembre de 2024, para exponer su posición en torno al recurso de epígrafe. Le apercibimos que, transcurrido el término dispuesto, se tendría el recurso por perfeccionado para su adjudicación final.

El 8 de noviembre de 2024, compareció la parte recurrente mediante *Moción Informativa de Incumplimiento de Orden.* Por medio de la referida moción, la parte recurrente trajo a nuestra atención que, había transcurrido el término ordenado para que la parte recurrida sometiera el expediente administrativo, en específico, habían transcurrido 22 días desde la notificación de la *Resolución* del 17 de octubre de 2024. A estos efectos, nos solicitó que ordenáramos el estricto cumplimiento de la aludida *Resolución,* para

que se elevara la totalidad del expediente administrativo del caso de epígrafe.

Subsiguientemente, el 12 de noviembre de 2024, emitimos *Resolución* mediante la cual le ordenamos a la AAA someter ante este Tribunal, copia del expediente administrativo en o antes del miércoles 20 de noviembre de 2024. Igualmente, le apercibimos a la parte recurrida que, el incumplimiento con lo ordenado daría lugar a la imposición de sanciones.

El 14 de noviembre de 2024, la AAA presentó la *Solicitud de Desestimación por Falta de Jurisdicción*. En la misma argumentó que, procedía la desestimación del recurso debido a que no se había notificado a la Secretaría de Vistas Administrativas.

Posteriormente, el 20 de noviembre de 2024, el ente administrativo presentó ante este foro *Escrito en Cumplimiento de Orden Judicial*, con el cual acompañó copia certificada del expediente administrativo AA-15-1409.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II**

### A. *Estándar de Revisión Judicial de Determinaciones Administrativas*

Como es sabido, las determinaciones administrativas suponen una presunción de legalidad y corrección, que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para derrotarlas. *Asoc. Fcias. v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010); *OEG v. Martínez Giraud*, 210 DPR 79 (2022); *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 216 (2012). Nuestro Máximo Foro ha enfatizado que, no podemos imprimirle un sello de corrección, so pretexto de deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho.

En *Torres Rivera v. Policía de Puerto Rico*, 196 DPR 606, 628 (2016), nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial de la forma siguiente:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero tal deferencia cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida.[1]

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad. *OEG v. Martínez Giraud*, supra, pág. 89; *Super Asphalt v. AFI y otros*, 206 DPR 803, 820 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 127 (2019); *Torres Rivera v. Policía de PR*, supra, pág. 626. Bajo este criterio, se limita la revisión judicial a dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción. *Íd.*; *Pérez López v. Depto. Corrección*, 208 DPR 656, 673 (2022); *OEG v. Martínez Giraud*, supra, pág. 90; *Super Asphalt v. AFI y otros*, supra, págs. 819-820; *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018); *Batista, Nobbe v. Jta. Directores*, pág. 216.

Bajo este supuesto, la Sec. 4.5 de la Ley Núm. 38 del 30 de junio de 2017, 3 LPRA 9675, conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), "estableció el marco de revisión judicial de las agencias administrativas". *Rolón Martínez v. Supte. Policía*, supra, pág. 35. La

---

[1] Véase *Super Asphalt v. AFI y otros*, supra, págs. 819-820.

intervención del tribunal se limita a tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas. *Íd.* págs. 35-36; *OEG v. Martínez Giraud,* supra, pág. 90*; Torres Rivera v. Policía de PR*, supra, págs. 626-627; *Nobbe v. Jta. Directores,* supra, pág. 217; Sec. 4.5 de la LPAU, 3 LPRA sec. 9675. Nuestro Máximo Foro ha expresado que, esta intervención "debe ocurrir cuando la decisión administrativa no se fundamente en evidencia sustancial o cuando la agencia se equivoque en la aplicación de la ley". *Rolón Martínez v. Supte. Policía*, supra, pág. 36. Siendo así, aquellas determinaciones de hechos formuladas por el ente administrativo deberán sostenerse cuando estén basadas en evidencia sustancial que surja del expediente administrativo considerado en su totalidad. *Íd; OEG v. Martínez Giraud,* supra, pág. 90; *Super Asphalt v. AFI y otros,* supra, pág. 819-820. Por otro lado, las determinaciones de derecho pueden ser revisadas en su totalidad. *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Torres Rivera v. Policía de PR*, supra, pág. 627; Sec. 4.5 LPAU, 3 LPRA sec. 9675. No obstante, los tribunales deberán darles peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra. *Rolón Martínez v. Supte. Policía*, supra, págs. 36-37; *Torres Rivera v. Policía de PR*, supra, pág. 627. El Tribunal Supremo ha dispuesto que, la deferencia que le deben los tribunales a la interpretación que haga el ente administrativo sobre aquellas leyes y reglamentos que le corresponde poner en vigor, cede si la agencia: "(1) erró al aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente, o (3) lesionó derechos constitucionales fundamentales. *Íd.* págs. 627-628; *OEG v. Martínez Giraud,* supra, pág. 90. Finalmente, nuestra más Alta

Curia ha expresado que, conforme lo anterior, el criterio administrativo no podrá prevalecer en aquellas instancias donde la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual fue aprobada la legislación y la política pública que promueve. Así, "la deferencia judicial al *expertise* administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder ante actuaciones que resulten irrazonables, ilegales o que conduzcan a la comisión de una injusticia". *Íd.*

### B. Debido Proceso de Ley

La Constitución del Estado Libre Asociado reconoce como derecho fundamental del ser humano el derecho a la vida, la libertad y el disfrute de la propiedad. Const. De PR, Art. II, Sec. 7, LPRA, Tomo I. También dispone que, previo a interferir con los intereses propietarios o libertarios de un ciudadano, el Estado debe cumplir con las exigencias del debido proceso de ley. *Garriga Villanueva v. Municipio de San Juan*, 176 DPR 182, 196 (2009). Similar reconocimiento, sobre la existencia del debido proceso de ley, se encuentra en la Enmienda V y XIV de la Constitución de Estados Unidos. *Hernández v. Secretario*, 164 DPR 390, 394 (2005).

El concepto del debido proceso de ley tiene dos vertientes: la sustantiva, que se refiere a la validez de las leyes que implementa el Estado en cuanto a su protección de los derechos de los ciudadanos, y la procesal, que se enfoca en garantizar un proceso justo y equitativo ante acciones estatales que interfieran con intereses privados. *PVH Motors v. ASG*, 209 DPR 122, 130 (2022); *Garriga Villanueva v. Municipio de San Juan*, supra, a la pág. 196; *Fuentes Bonilla v. ELA et al.*, 200 DPR 364, 394 (2018); *Domínguez Castro v. ELA*, 178 DPR 1, 35 (2010).

Dado a que las agencias administrativas, bajo sus funciones administrativas interfieren con los intereses de libertad y propiedad

de las personas, las garantías del debido proceso de ley son aplicables a sus procesos. *St. James Sec. v. AEE,* 2023 TSPR 149, 213 DPR ___ (2023); *PVH Motors v. ASG,* supra, pág. 130-131. Sin embargo, en el derecho administrativo el debido proceso de ley no tiene la misma rigidez que en la esfera penal. *Íd.* Ello, se debe a la necesidad que tienen las agencias de regular las áreas que le han sido delegadas por la Asamblea Legislativa debido a su peritaje en el campo. Aun así, el procedimiento adjudicativo debe de ser uno justo y equitativo. *Báez Díaz v. ELA,* 179 DPR 605, 623 (2010). Es por lo que, el procedimiento adjudicativo frente a las agencias, deberá ceñirse a las garantías mínimas del debido proceso de ley. *PVH Motors v. ASG,* supra, pág. 131; *Alamo Romero v. Adm. de Corrección,* 175 DPR 314 (2009).

En armonía con lo anterior, en los procesos adjudicativos se exige como mínimo: (1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (4) derecho a contrainterrogar a los testigos y examinar la evidencia presentada en su contra; (5) contar con asistencia de un abogado, y (6) que la decisión se base en el expediente. *PVH Motors v. ASG,* supra, pág. 131; *St. James Sec. v. AEE,* supra.

Para determinar si un procedimiento administrativo de tipo adjudicativo cumple con los requisitos constitucionales del debido proceso de ley, hay que analizar los factores siguientes: el interés privado que puede resultar afectado por la actuación oficial; el riesgo de una determinación errónea debido al proceso utilizado y el valor probable de garantías adicionales o distintas; y el interés gubernamental protegido en la acción sumaria, inclusive los cargos fiscales y administrativos que conllevaría el imponer otras garantías procesales. *Báez Díaz v. ELA, supra,* a la pág. 623.

### C. Prescripción

La prescripción, es una institución de derecho sustantivo, no procesal, que se rige por las disposiciones del Código Civil y que, constituye una de las formas de extinción de las obligaciones. El fundamento detrás de esta institución es evitar la incertidumbre de las relaciones jurídicas y castigar la inacción en el ejercicio de los derechos, y a que, el transcurso del período establecido por ley, sin que el titular del derecho lo reclame, da lugar a una presunción legal de abandono. *Acevedo y otros v. Dpto de Hacienda y otros*, 212 DPR 335, 355 (2023); *Galib Frangie v. El Vocero*, 138 DPR 560 (1995); *Zambrana Maldonado v. ELA*, 129 DPR 740 (1992); *Fraguada Bonilla v. Hosp. Aux. Mutuo*, 186 DPR 365, 373 (2012). Los términos prescriptivos buscan castigar la inercia y estimular el ejercicio rápido de las acciones. *Íd.*; *Haedo Castro v. Roldán Morales*, 203 DPR 324, 336 (2019); *Birriel Colón v. Econo y otro*, 2023 TSPR 120, 213 DPR ___ (2023).  De esta forma, extingue el derecho a ejercer alguna causa de acción debido a la inacción de una parte durante un tiempo determinado. *Íd.*

Una vez agotado el término prescriptivo disponible para ejercer determinada acción, se extingue el derecho a reclamar por la misma, y se exonera la persona que estaba sujeta a responder. *Acevedo y otros v. Dpto de Hacienda y otros*, supra, pág. 355.

Por otro lado, en lo pertinente, el Art. 1866 del derogado Código Civil de 1930, respecto a las acciones que prescriben a los cinco años dispone lo siguiente:

> Por el transcurso de cinco (5) años prescriben las acciones para exigir el cumplimiento de las obligaciones siguientes:
>
> (1)  La de pagar pensiones alimenticias.
> (2)  Las de satisfacer el precio de los arriendos, sean éstos de fincas rústicas o de fincas urbanas.

(3) **La de cualesquiera otros pagos que deban hacerse por años o en plazos más breves.**[2] (*Énfasis nuestro*).

Esbozada la normativa jurídica que enmarca la controversia de epígrafe, procedemos a aplicarla.

### III

En su primer señalamiento de error, la parte recurrente sostiene que, la agencia recurrida incidió al no considerar la totalidad del expediente, y al imputarle un consumo inusual de agua durante el periodo impugnado. Añade que, tal omisión conllevó a una evaluación defectuosa de la prueba documental presentada.

Adelantamos que, le asiste la razón. Veamos.

De acuerdo al tracto reseñado, el señor González Madrigal objetó los cargos presentados mediante la factura por consumo de agua para los meses de junio, julio, agosto y septiembre de 2015. Luego de que el 20 de septiembre de 2024 fuera celebrada la vista administrativa, el 26 de septiembre de 2024 la AAA emitió la *Resolución* cuya revisión nos atiene. Por medio de esta, determinó que, no existió error al facturar los cargos, en la medida en que el contador estaba en perfectas condiciones y no existía pérdida de agua atribuible a la AAA. De igual forma, en sus determinaciones de hechos, sostuvo que, el alto consumo se debía a que, durante el racionamiento de agua que tuvo lugar en los meses de las facturas objetadas, la señora Martirena Pérez almacenaba 42 galones de agua en la marquesina de su casa.

Nuestro ordenamiento jurídico establece que, nos corresponde revisar las decisiones administrativas bajo el criterio de razonabilidad.[3] Conforme a este, nos limitamos a dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan

---

[2] 31 LPRA sec. 5296

[3] *OEG v. Martínez Giraud*, supra, pág. 89; *Super Asphalt v. AFI y otros*, supra, pág. 820; *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Torres Rivera v. Policía de PR*, supra, pág. 626.

irrazonable que su actuación constituyó un abuso de discreción[4]. Nuestra intervención se circunscribe al determinar: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia se encuentran sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas.[5]

De las determinaciones de hechos surge que, la señora Martirena Pérez almacenaba 42 galones de agua en la marquesina de su casa en días alternos durante el periodo de racionamiento de agua. La AAA adjudicó el alto consumo de agua al mencionado almacenamiento de agua. Como bien expone la parte recurrente, dicho razonamiento resultaría erróneo, en la medida en que, el almacenamiento de agua por la cantidad mencionada no justifica el alegado consumo de 13,469.84 y 23,242.08 galones de agua reflejados en las facturas de junio y julio.

A pesar de que el ente administrativo hizo referencia a que una vez concluido el periodo de racionamiento y la práctica de almacenar agua, no existía factura o consumo de agua de manera similar, entendemos que, este no llevó a cabo un análisis extenso y profundo del historial de lecturas del contador y de las facturas, previo y posterior al periodo impugnado. Únicamente sostuvo su decisión en una explicación escueta y un análisis superficial.

Según propone la parte recurrente, no surge de la *Resolución* que la AAA hubiese tomado su decisión basada en la totalidad del expediente ni de la prueba presentada. Si bien es cierto que, las agencias administrativas merecen nuestra deferencia, esta

---

[4] *Íd.*; *Pérez López v. Depto. Corrección*, supra, pág. 673; *OEG v. Martínez Giraud*, supra, pág. 90; *Super Asphalt v. AFI y otros*, supra, pág. 819-820; *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Batista, Nobbe v. Jta. Directores*, supra, pág. 216.

[5] *Rolón Martínez v. Supte. Policía*, supra, págs. 35-36; *OEG v. Martínez Giraud*, supra, pág. 90*; Torres Rivera v. Policía de PR*, supra, págs. 626-627; *Nobbe v. Jta. Directores*, supra, pág. 217; Sec. 4.5 de la LPAU, 3 LPRA sec. 9675.

diferencia puede ser preterida cuando la decisión de la agencia no sea razonable.

Luego de revisar minuciosamente el expediente, somos del criterio que, la decisión de la agencia es manifiestamente errónea en la medida en que no estuvo basada en la totalidad del expediente.

Como segundo señalamiento de error, la parte recurrente arguye que, la agencia recurrida erró al no considerar las alegaciones de la parte recurrente sobre violación al debido proceso de ley, por la dilación de los procedimientos, al transcurrir nueve (9) años desde que fue solicitada la vista administrativa hasta su celebración y al no adjudicar la objeción a su favor.

Adelantamos que, le asiste la razón. Veamos.

Según reseñáramos, el 12 y 26 de septiembre de 2015, el señor el señor González Madrigal presentó dos solicitudes de vista administrativa por encontrarse en desacuerdo con la determinación de la AAA sobre las facturas de los meses de junio, julio, agosto y septiembre de 2015. El 8 y 14 de noviembre de 2015, la AAA le remitió dos notificaciones al señor González Madrigal donde le informó que, su caso respecto a las aludidas facturas, había sido referido al área de Vistas Administrativas.

Sin embargo, pudimos constatar que, no fue sino hasta el **20 de septiembre de 2024** que, la AAA celebró la vista solicitada desde **septiembre de 2015**. Es decir, transcurrieron **nueve (9) años** desde de su solicitud.

Es harto conocido que, debido a que las agencias administrativas bajo sus funciones interfieren con los intereses de libertad y propiedad de las personas, las garantías del debido proceso de ley son aplicables a sus procesos[6]. A pesar de que aplican dichas garantías, en el ámbito administrativo el debido proceso de

---

[6] *St. James Sec. v. AEE*, supra; *PVH Motors v. ASG*, supra, pág. 130-131.

ley no tiene la misma rigidez que en la esfera penal.[7] Sin embargo, el procedimiento adjudicativo deberá ser uno justo y equitativo.[8] Es por lo que, en los procesos adjudicativos se exige como mínimo: (1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (4) derecho a contrainterrogar a los testigos y examinar la evidencia presentada en su contra; (5) contar con asistencia de un abogado, y (6) que la decisión se base en el expediente.[9]

Con el propósito de determinar si un procedimiento administrativo de tipo adjudicativo cumple con los requisitos constitucionales del debido proceso de ley, es necesario analizar los siguientes factores: el interés privado que puede resultar afectado por la actuación oficial; el riesgo de una determinación errónea debido al proceso utilizado y el valor probable de garantías adicionales o distintas; y el interés gubernamental protegido en la acción sumaria, inclusive, los cargos fiscales y administrativos que conllevaría el imponer otras garantías procesales.[10]

La injustificada dilación de la AAA en celebrar la vista administrativa incidió de forma directa con las garantías procesales del debido proceso de ley de la aquí recurrente. En primer lugar, conforme surge del recurso de epígrafe, el señor González Madrigal, quien fue el que objetó los cargos inicialmente, falleció el 14 de noviembre de 2016. Lo que conllevó a que su testimonio no pudiese estar disponible en la vista, y que fuera la señora Martirena Pérez de 96 años, quien tuvo que continuar el proceso. Por otro lado, el Maestro Plomero Luis González Sánchez, perito, emitió una certificación en la cual aseguró que, "se verificó todos los equipos de baños los cuales están en perfectas condiciones". Además, que,

---

[7] *Íd.*

[8] *Báez Díaz v. ELA,* supra, pág. 623.

[9] *PVH Motors v. ASG*, supra, pág. 131; *St. James Sec. v. AEE*, supra.

[10] *Báez Díaz v. ELA, supra*, a la pág. 623.

había probado la tubería de cobre y que esta no había reflejado ninguna filtración, y entendió que, no hay ninguna pérdida de agua que justificara el alegado alto consumo de agua. Debido al extenso periodo de inactividad del caso por parte de la AAA, el perito González Sánchez no pudo ser localizado para testificar en la vista administrativa. De igual forma, el ente administrativo tomó de referencia unas cartas donde se afirmaba que se había llevado a cabo una investigación por funcionarios de la AAA, quienes no fueron traídos a la disposición de la parte recurrente para ser contrainterrogados.

Coincidimos con la parte recurrente en cuanto a que, todo lo anterior conllevó una clara violación del debido proceso de ley de la agencia recurrida, en vista de que la parte recurrente no contó con la oportunidad de presentar prueba a su favor que pudiese ser tomada en cuenta por la AAA al momento de emitir su dictamen.

Los hechos procesales del caso demuestran que la parte recurrente en todo momento fue diligente en el trámite de su causa. Sin embargo, no se desprende de forma alguna *justa causa* para la **excesiva dilación** de la agencia en celebrar la vista administrativa. La AAA no justificó alguna circunstancia excepcional que le haya imposibilitado tramitar el caso de manera rápida y efectiva, salvaguardando las garantías mínimas del debido proceso de ley.

Cabe destacar que, la Secc. 3.13(g) de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38 de 30 de junio de 2017, según enmendada, establece un término directivo de seis (6) meses, para que todo caso sometido a un procedimiento adjudicativo ante una agencia sea resuelto, desde su radicación, salvo en circunstancias excepcionales.[11]

---

[11] 3 LPRA sec. 9653.

En vista de todo lo anterior, es forzoso concluir que, el planteamiento de la parte recurrente es meritorio y que, su objeción a las facturas debe ser resuelta a su favor.

Finalmente, como tercer señalamiento de error, la parte recurrente sostiene que, la AAA omitió aplicar la prescripción de la deuda establecida en el Código Civil de Puerto Rico, que dispone un plazo de cinco años para exigir el pago de obligaciones.

Como discutimos previamente, la agencia recurrida demoró desde el 2015 hasta el 2024 para celebrar la vista administrativa solicitada por el señor González Madrigal. Si bien es cierto que, a pesar de que la LPAUG, según explicamos, establece un término directivo de seis (6) meses para que se concluya un procedimiento administrativo como resultado de una querella[12], esta guarda silencio en cuanto a las consecuencias de no concluir el trámite dentro de dicho término. A tales efectos, de acuerdo con lo expuesto por la parte recurrente en su recurso, nos corresponde acudir al Código Civil con el propósito de realizar un análisis respecto a la prescripción de las obligaciones. Podemos concluir que lo estatuido por el Código Civil, aplica de manera supletoria a los procedimientos administrativos. La inacción de la parte recurrida por todos esos años, de forma injustificada, nos lleva a determinar que, la obligación quedó prescrita. Recordemos que, la prescripción tiene como fundamento el evitar la incertidumbre de las relaciones jurídicas y castigar la inacción en el ejercicio de los derechos.[13]

**IV**

Por los fundamentos que anteceden, se revoca la *Resolución* recurrida.

Notifíquese.

---

[12] 3 LPRA sec. 9653.
[13] *Acevedo y otros v. Dpto de Hacienda y otros*, supra, pág. 355.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones